Lee, J.
If it could he considered an open question whether a party claiming a perfect legal title under a grant from the commonwealth can maintain a caveat against one seeking to obtain a new grant for the same land, under the provisions of our act of assembly, I should have little difficulty in holding that the remedy is inappropriate to such a case, thinking as I do that the argument to show that it is a proceeding for the discussion of equitable rights merely and not intended to draw an equitable right into comparison with an alleged perfect legal title, has never been answered and is in truth conclusive. But under the influence of the cases of Preston v. Harvey, 3 Call 495; Tanner's adm’r v. Saddler, 2 Hen. & Munf. 370; and Hardman v. Boardman, 4 Leigh 377; in all of which the caveat was sustained on the basis of a complete legal title in the caveator, either actually shown or presumed in his favor, and of the settled and long continued practice during a period within which there have been two revisáis of our statute law without any change upon this subject, I must regard it as no longer a debatable matter and hold it as now fully settled that a party may well enforce a complete legal title by caveat against another seeking to obtain a new grant for the same land however inexpedient it may be in many cases in which he has the actual possession also to forego the advantage of his position as defendant and take that of an assailant in exercising his right so to do.
The act of 1819 provides that a caveat on the ground *474 of better right in the caveator shall express therein the nature of the right on which the plaintiff claims the land. 1 Rev. Code, ch. 86, § 38, p. 330. The present Code contains the same provision. Code of Virginia, ch. 112, § 24, p. 483. The object is to apprise the caveatee of the grounds on which the caveator claims the better right that he may come prepared to controvert it. Harper, &c. v. Baugh, &c. 9 Gratt. 508. And it has been held in Kentucky upon the construction of a similar provision in their Code, that the plaintiff can only rely on the grounds of better right set forth in his caveat. Justices of Allen County v. Allen, 2 A. K. Marsh. 30. The caveators in this case contented themselves with saying in their caveat that they claimed to hold the land by an older and better title. The nature of their right is in no manner expressed except that they claim as devisees of James Kyle deceased and, in part, as trustees of Sarah McDowell. This is plainly no compliance with the requirement of the statute and the caveat is defective upon its face. But if the caveatees desired to take advantage "of this defect, it was their duty to make the objection at a proper stage of the proceeding by a motion either to dismiss the caveat or to require the plaintiffs to file a specification of the alleged better right on which his claim is founded. After the jury have been sworn to find the facts, the objection would come too late and it cannot therefore be the subject of consideration here.
These points being disposed of, we come to the questions upon the merits. And the first of these is as to the admissibility of the survey from the surveyor’s book of Augusta county bearing date on the 20th of November 1749, as evidence for the caveators. The caveatees in stating their case had said that they should insist upon the evidence, as it would appear, that no actual survey of the land described in the grant to Wood under whom the caveators claimed had *475 ever been made; and to repel such a presumption, the Circuit court permitted the caveators to read the survey to the jury. That the official survey upon a grant has issued under the provisions of our act of May 1779 may be used as presumptive testimony before the jury with a view to identify the calls of the patent subject to be repelled by other evidence of identity either derived from the grant or extrinsic thereto, has I believe never been questioned. Even the original entry may be used for that purpose. Camden v. Haskill, 3 Rand. 462. And so other surveys made by the same surveyor about the same time or recently thereafter and upon which grants have issued from the commonwealth, are proper evidence upon the question as to the locality or boundary of a coterminous or neighboring tract although such grantees may be strangers to the parties to the controversy. Overton's heirs v. Davisson, 1 Gratt. 211. The same reasons would apply with equal force in the case of a grant under the colonial government. In June 1666, and again in October of the same year, the grand assembly declared that the grants of lands within the colony appertained only to the governor and council. 2 Hen. St. 253. In October 1705 (4 Anne) an act was passed providing the mode of obtaining grants for lands upon importation rights as well as for lands generally. It authorized a party not possessing any importation right, to pay to her majesty’s receiver general at the rate of five shillings for every fifty acres he desired to take up and upon certificate of such payment, any sworn surveyor to whom it should be produced was authorized and required to survey the quantity paid for and to make return of such survey into the secretary’s office to the end that a patent might issue thereupon. 3 Hen. St. 305, et. seq. And the form in which the patent was to issue was provided in the act. Ibid. p. 308. By the act of *476 174S, § 46, surveys of lands intended to be patented were required to be made by a sworn surveyor duly for that purpose and the breadth of every surVey was required to be at least one-third of p;S length except where the courses were interrupted by rivers, creeks, impassable mountains and swamps or the lines of other lands previously taken up. 5 Hen. St. 424. It appears that James Wood paid to the receiver general the sum of fourteen pounds entitling him to have surveyed twenty-eight hundred acres of land ; and on the 20th of November 1749 he procured the surveyor of Augusta county to survey the same for him : and upon that survey manifestly the patent issued to him in 17-56. For although the patent does not describe the survey by its date as does a grant under our act of 1779, nor indeed refers in terms to any survey, yet as the description of the land imports that a survey was made and as in the due course of obtaining a grant, a survey was necessary, the presumption is that one was made; and as this survey exactly agrees with the grant in the general and locative calls for the land described and in all the courses and distances of its lines of boundary, the conclusion is irresistible that it was the survey on which the grant was founded. That the surveyor’s certificate does not embody the courses and distances of the lines and that they are only appended in the form of a plat of the survey, is a matter merely formal: they are as much a part of the description as if set out in hose verba in the body of the certificate. I think it clear the Circuit court properly permitted the survey to be read in evidence to the jury.
Next is the question as to the competency of the witness Kenny. And upon this there can be no doubt. He had purchased a portion of the land embraced by the grant to Wood of parties claiming under that grant and he claimed that the Wood survey should be located *477 in the same manner as the caveators claimed in this proceeding. But the land claimed by the caveators was no part of that which he had purchased nor was there any privity between them which could render the judgment in this case evidence for or against him in any other action. True, he admitted that lie felt an interest in the “ establishment” of the Wood survey as claimed by the caveators, but this was an interest in the question, and not in the event of the suit; going to his credibility, but not to his competency, lie was therefore properly held to be a competent witness. Richardson v. Carey, 2 Rand. 87; Masters v. Varner’s ex'ors, 5 Gratt. 168.
But although Kenny was clearly a competent witness, I do not perceive on what just ground the court overruled the objection to his answer to the second interrogatory. It gave but the unsworn statements of Code that two certain corners designated were corners of the Wood survey. It is true Code was living on the same land at the time, and he had left the countiy many years before the trial and was at that time no doubt dead. Nor is it denied that upon questions of boundary in Virginia, not only general reputation, but also hearsay evidence as to particular facts may under certain circumstances be properly received as evidence. Thus the declarations of a deceased person as to a particular corner tree or boundary may be given in evidence provided such person had peculiar means of knowing the fact. Harriman v. Brown, 8 Leigh 697. In Kentucky the rule would seem to be different. For although evidence of reputation or common tradition will be admitted as to an ancient boundary, (Smith v. Norvells, 2 Litt. R. 159,) yet evidence of hearsay as to particular facts to prove such boundary will be excluded unless perhaps in cases where the name of a water course or some other object which commenced by parol be necessary to be estáb *478 listed. Cherry v. Boyd, Litt. Sel. Cas. p. 8. But although as stated in the opinion of the court in Boardman v. Reed, 6 Peters’ R. 328, and approved in Harriman v. Brown, (above cited,) from the perishable character of the land marks in this country, evidence of hearsay as to particular facts may under proper restrictions be received upon a question of ancient boundary, yet such evidence should be carefully watched because from its very character it may in many or most cases be utterly impossible to meet or disprove it. There must always be some peril in departure from the broad general rules of evidence, and it should not be carried farther than required by the absolute necessities of the case. I think the rule is laid down sufficiently broadly in Harriman v. Brown and I am not disposed to extend it in the least beyond the very terms in which it is there expressed.
In this case Cock the person whose statements were allowed to be proven, was neither surveyor nor chain carrier at the making of the original survey, nor was he the owner of the tract or of any adjoining tract calling for the same boundaries. He had never been engaged as a processioner of the land nor was his situation such in reference thereto as to render it his duty or interest to make diligent enquiry and obtain accurate information as to the facts. It is said he was living on the land at the time, but in what character is not stated. It is not said that he was there as tenant under the Wood title or as a claimant for himself under any title. For aught that is shown in regard to his occupation, it may have been that of a mere squatter. Certainly nothing is shown from which it is to be inferred that Code had that peculiar means of knowing the facts which would impress upon his unsworn statements the character of evidence in a subsequent controversy between others to whom he was entirely a stranger about the title to the land. *479 That his living within the bounds of the survey gave him the opportunity to see trees marked as corners of some survey, found accidentally or otherwise, would surely not be sufficient unless some duty or interest can be traced to him by which he would have been prompted to make diligent enquiry and to obtain accurate information within the meaning of the rule as propounded in Harriman v. Brown.
I think the Circuit court should have excluded the answer to the second interrogatory as it properly did those to the thirteenth, fifteenth and sixteenth interrogatories to the same witness.
I think the Circuit court erred also in permitting the grants to Frisbie and Jones to go to the jury as evidence upon the question of the identity of the Wood survey. In Overton's heirs vs. Davisson, 1 Graft. 211, it was held that in a controversy concerning boundary or locality of land granted by the commonwealth pursuant to a survey, another survey made by the same surveyor about the same time or recently thereafter, of a coterminous or neighboring tract, upon which also a grant had issued whether to a party to the controversy or to a stranger, is proper evidence upon the question of identity unless plainly irrelevant; and accordingly it was decided that the Circuit court had erred in rejecting the surveys for Thomas and Lewis which the demandants had offered in evidence. Those surveys were dated on the 28th and 29th days of April 1785, respectively. The date of the survey on which the grant to Overton was founded does not appear in the report of the case, but the grant was dated on the 23d of May 1786, and all three surveys were doubtless made nearly about the same time and by the same surveyor. In this case, the survey for Frisbie was made on the 31st of October 1795, nearly forty-six years after the Wood survey, and the survey for Jones was made on the 15th of March 1809 nearly sixty years after the *480 Wood survey. The surveys for Frisbie and Jones were ma(ie % the surveyor of Grayson doubtless a different from the surveyor of Augusta in 1749. They cou}¿ no£ therefore come within the rule of Overton v. Davisson. They were clearly res inter alios, and I am aware of no principle on which their admissibility as evidence in this case can be sustained. Any call which they might contain for “ Wood’s line” without further explanation, would be at best the mere declaration of a party having no peculiar means of knowing the fact and whom neither duty nor interest would so far as is shown, have prompted to make the necessary enquiry with a view to obtain accurate information. It would be but his supposition where the line was, having nothing of the only elements which could render it evidence in a controversy between third persons. And it is exactly one of those calls which we are told are often mere matters of conjecture and always liable to be mistaken. Harriman v. Brown, 8 Leigh 697, 705, per Tucker, president.
We come next to the instructions given by the court to the jury.
In telling the jury that if they should be satisfied particular corners of the B^ood survey had been established by the evidence the lines must be so run as to go to those corners notwithstanding it might involve a variation in both course and distance, the court certainly committed no error. It was only the familiar proposition that natural objects or other proven corners will control course and distance. But I do not perceive clearly what was intended by the addition made to this instruction “that in making said variation there ought to be a fair allowance made in each line and course, if necessary.” The idea would seem to be that if variations of course and distance were found necessary for the purpose indicated, there should be something in the nature of an average established *481 by assigning to .each line a just proportion of such variation. This certainly cannot be correct. The course and distance of a line cannot be determined upon any such principle. The true principle is that the course and distance called for in the grant must govern in respect of each line except so far as they may be controlled by calls for natural objects or artificial monuments proven to have been made or adopted for the survey itself, and in fixing those of any one line no reference can legitimately be had to the variation from the patent calls that may be found necessary in determining the course and distance of any other line according to natural or other controlling objects found upon the ground.
I think the Circuit court also erred in instructing the jury that if they were satisfied certain corners specified were established by the evidence as corners of the Wood survey and that the surveyor had laid down upon his plat the intermediate courses correctly, it was all that was necessary to be done, because it was in that (the western) portion of the Wood survey, the caveatees’ survey embracing the land they claimed title to was found to lie, and that it was not necessary for them to ascertain whether the courses of the intermediate lines on the other or eastern portion of the Wood survey were correctly designated or otherwise because the title and boundaries of that portion of the survey were not in controversy in that case. It was not sufficient that the jury should have been satisfied that the courses of the intermediate lines around the western part of the survey had been laid down correctly, because the true length of each of those lines was quite as important as the course, and this was to be determined not by making a fanciful allowance in order to preserve a general average of variation but by the patent call for distance unless the same were controlled by a call for some natural object or some artifi *482 cial monument sufficiently established, in which case the distance should be shortened or lengthened accordingly. And although the land covered by the caveatees’ entry lay in the western part of the Wood survey and within the compass of the intermediate lines running around that portion from what is called the “ burnt corner” to the “ beginning corner” and a line connecting those two corners, yet it by no means follows that the title to the residue of the Wood survey and its boundaries were not also drawn into controversy. A survey upon which a grant has issued is an entire thing, and if its identity be contested, the title to the whole and all its boundaries become more or less matter of dispute. It may very well happen and in many cases must be that the locality of the boundary lines of a survey in a particular part depends upon the calls in an opposite and extreme portion of the survey; and although there may be intermediate calls, yet if there should be any repugnancy between them or any of them, it would be for the jury to say which are to be observed and which to be disregarded upon the principle that those which are more certain and important shall control those which are less so.
I think therefore the court unduly restricted by its instruction, the enquiry which the jury had to make ; and that in answer to their enquiry they should have been told, that it was their duty to consider the evidence offered as to all of the corners and lines of the survey: that where a corner was established to their satisfaction, the lines appearing to radiate from such corner should be so drawm as to converge at the same, and course and distance should both be changed so far as necessary for that purpose; and where no corner was found the patent calls for course and distance must be their guide and must supply such lines as were not established by the proofs on the ground ; *483 that any conflict that might be found among the different calls was to be reconciled by them upon the principle above indicated and in this manner that they should give location to the entire survey, and determine for themselves whether it embraced the whole or any part of the land within the survey of the caveatees.
I proceed to consider briefly the facts of the case as ascertained by the finding of the jury.
The caveators claimed under the grant to James Wood dated the 16th of August 1756. To connect themselves with this grant they introduced the will of Col. Wood, dated the 8th of September 1746 and admitted to probate in the County court of Frederick in February 1760, by which he devised all his estate real and personal to his wife Mrs. Mary Wood subject to certain pecuniary charges in favor of children: they then produced a deed from Mrs. Wood by which she conveyed (in 1791) parcel of this land by metes and bounds containing seventeen hundred and eighteen acres, to Robert Wood a sou of Col. James Wood, and also another deed of the same date by which she conveyed the residue of said land by metes and bounds supposed to contain one thousand and eighty-two acres to Mrs. Susannah Wood widow of Dr. John Wood another son of Col. Wood, for life and after her death, to Fanrose and Stanhope Wood two sons of Dr. Wood: Robert Wood in his lifetime sold and conveyed a portion of the land conveyed to him by his mother to one John Kenny, and after his death by deed dated the 16th of April 1833, his widow and heirs conveyed the residue to James Kyle under whose will the caveators claimed as devisees: Stanhope Wood by deed dated the 9th of August 1821, conveyed one moiety of the land conveyed to him and his brother Fanrose Wood by Mrs. Wood in 1791 to the same James Kyle, and Fanrose Wood by deed of the 16th of May 1823 re *484 leased his interest in the moiety so conveyed. The will of James Kyle was then found by which he devised his estate to the caveators subject to a provision in favor of his wife. The juiy also find that the land in controversy is embraced by the conveyances and wills under which the caveators claimed title, and that after the purchase of the same by James Kyle the taxes on the land had been l-egularly paid.
The foregoing is in substance all the facts found by the jury and no other facts appear to have been agreed by the parties.
Now at the date of the will of James Wood and until the act of 1787, it is clear that after acquired lands would not pass by a devise in the most general terms of all of a testator’s lands, tenements and estate whatsoever of which he was or at the time of his decease might be possessed. Brunker v. Cook, 11 Mod. R. 121; S. C. on appeal, 1 Bro. P. C. 19; 1 Wms. Saund. 277, n. (e.); 3 Lorn. Dig. 19. And as the grant did not issue, nor was even the survey made until some years after the date of the will, and no interest shown in Wood of any kind either legal or equitable, at that date, the land did not and could not pass by the devise to Mrs. Wood, but upon the death of the testator descended to his oldest son as his heir at law, the Vii'ginia statute of descents not having been enacted till 1785. But although the caveators failed to connect themselves with the grant to Wood through his will, still such a succession might be shown to the right which descended to the heir at law as would be sufficient to maintain this proceeding. Or if the better right cannot be deduced by descent from the patentee, yet the possession of those claiming under the deeds from Mrs. Wood might have been under such circumstances as would itself invest the caveators with such a title or such an interest in the premises as would authorize them to interpose and prevent the *485 emanation of a grant to the caveatees. But upon these subjects the finding of the jury is wholly silent. It is not found who was the heir at law of James Wood nor what may have been the course of descent from him nor whether any interest in this land was vested in those or any of them under whom the caveators claim. It is not found how many sons James Wood bad, nor which of them survived him, nor which was the oldest. Nor is any thing found as to the possession of the land; whether the same was ever taken by any one claiming under the Wood grant, and if so, when taken and how long continued. It may be there has been such possession under claim of title as would itself suffice to vest a perfect legal title in the caveators, or with the other circumstances shown in the case would authorize the jury to presume an abandonment of his claim or some family arrangement amounting to a conveyance or release of the right of the heir of James Wood whoever he may have been, to those under whom the caveators now claim.
I think the finding of the jury is so defective that the court could not understanding^ and safely undertake upon the facts which are found to adjudicate upon the rights of the parties, and that therefore the appellants are not entitled to have final judgment pronounced here in their favor, but that the cause should be sent back to the Circuit court for a more full and perfect finding of the facts upon which the rights of the parties may essentially depend. See Cropper v. Carlton, 6 Munf. 277; McNeel v. Herold, 11 Graft. 309.
I am of opinion to reverse the judgment and remand the cause for a new trial.
The other judges concurred in the opinion of Lee, J.
*486 The judgment of the court is as follows :
The court, for reasons stated in a written opinion filed with the record, is of opinion that the said Circuit C0lu,j. ¿y no£ err jn permitting the copy of the survey dated the 20th of November 1749 mentioned in the first bill of exceptions to be read as evidence to the jury nor in admitting as evidence the deposition of William Kenny mentioned in the second bill of exceptions, the court being of opinion that the said William Kenny was not shown to be incompetent as a witness in this cause. But the court is of opinion that the Circuit court did err in permitting the answer to the second interrogatory to the said Kenny upon his examination in chief to be read as evidence this court being of opinion that the statements and declarations of John Cock which were given in that answer were not evidence against the caveatees, and that the same should have been excluded from the jury as well as the answers to the thirteenth, fifteenth and sixteenth interrogatories which were properly excluded by the court. And the court is of opinion that the objection to the said second interrogatory and the answer thereto should have been sustained.
And the court is further of opinion that the Circuit court erred in permitting the patents to Frisbie and Jones mentioned in the third bill of exceptions to be read as evidence to the jury, this court being of opinion that the said grants were not evidence against the said caveatees upon the question of the identity of the Wood survey or any other matter in issue between the parties in this cause.
And the court is further of opinion that in so much of the instructions given by the court to the jury mentioned in the fourth bill of exceptions as informed them that if they should be satisfied that particular corners of the Wood survey were established by the testimony, the lines must be run so as to go to said corners al *487 though so to run them might require a variation both in course and distance, there is no error, but that the rest and residue of said instructions was erroneous, this court being of opinion that in lieu thereof and in answer to the question propounded by the jury, the court should have instructed them that it was their duty to consider the evidence offered as to all of the corners and lines of the survey; that if there should appear to be any irreconcilable conflict or repugnancy between the different calls or any of them, they were to hold to and be governed by those which were most certain and important rejecting those if any which were less so: that if any corner or corners should be established to their satisfaction, the lines radiating therefrom were to be so run as to converge at the same upon the ground and that course and distance should both be changed so far as necessary to make them so converge; that where no corner could be found, the patent calls for course and distance must be their guide and must supply such lines as could not be established by the proofs of such corner or of the lines themselves intersecting thereat; and that in this manner they were to give location to the entire survey and to determine for themselves whether it covered the land embraced by the caveatees’ survey or any part thereof.
And the court is further of opinion that the finding of the facts by the jury sworn in the cause was imperfect and insufficient and that the court could not understandingly and safely undertake to pronounce final judgment thereupon between the parties; that the same does not ascertain who was the oldest son and heir at law of the said James Wood or whether there was any succession on the part of those under whom the caveators claimed title to the rights of such heir at law, and if any what was the character of such succession and to whom it applied; nor does it find that there was any family arrangement between said *488 parties either proven in fact or to be presumed from the long continued claim of those under whom the caveators claimed and the acquiescence of those who may have been entitled by descent from the said James-Wood and the other circumstances of the case; nor does it find whether possession was ever taken and held under the Wood title and if so, when taken, by whom, and how long continued.
The court is therefore of opinion that final judgment ought not now to be pronounced upon the finding aforesaid, but that the same ought to be set aside and a new trial had upon the principles herein before declared.
Therefore reversed &c. and cause remanded for a new trial upon which if the same questions shall arise as those upon which the opinion of this court has been herein before expressed, the rulings and opinions of the Circuit court shall conform to the views and principles above declared. Which is ordered &c.