# 𝔊harleston.

JOHN L. MCMULLIN AND GEORGE M. MORRISON *vs.* JOHN D. LEWIS AND H. C. DICKINSON.

### January Term, 1872.

1. The rule laid down in the case of *Overton's heirs* vs. *Davison*, 1 Gratt., 211, as limited and explained by the case of *Clements* vs. *Kyles*, 13 Gratt., 468, adhered to; that it is proper in a controversy concerning the boundary or locality of a tract of land granted by the commonwealth, pursuant to a survey, to permit to go to the jury as evidence the calls and description of a survey made by the *same* surveyor, about the same time, or recently thereafter, of a coterminous or neighboring tract, upon which last-mentioned survey a grant has also issued from the commonwealth, whether to a party to the controversy or a stranger, upon such question of boundary or locality, unless plainly irrelevant, to have such weight with the jury as under all the circumstances they may consider it entitled to.
2. A case in which the surveys and grants admitted did not fall within the operation of the above rule.

This was an action of ejectment in the circuit court of Kanawha county, brought to February rules, 1861. Verdict and judgment for the defendants, Lewis and Dickinson, at November term, 1869.

On the trial the defendants offered in evidence several contiguous surveys and grants made by *different surveyors* other than the one who made the survey of the land in controversy, although made about the same time; the survey of the latter having been made in 1794, and of the former in 1795. The plaintiffs objected to the introduction of the contiguous surveys and grants, "as incompetent evidence to prove, or aid in proving, the identity of the land in controversy; or to prove, or aid in proving, its corners or lines or any one of them, or the bounds thereof."

The court overruled the motion to the plaintiffs' objection, and they excepted.

The plaintiffs brought the case to this court.

*T. B. Swann* and *Lee* for the plaintiffs in error.
*Miller & Quarrier* and *Fitzhugh* for the defendants in error.

Lee and Swann maintained :

1. That the court erred in permitting the jury to receive and consider the surveys and grants of the 30,000 acres (to Work and Corran), the 19,500 acres, the 27,000 acres, and the 32,097 acres, as competent and proper evidence to establish the identity of the 40,000 acres surveyed and patented to Skiles, under which the defendants claimed.

The survey of Skiles, as we have seen, was made on the 24th of October, 1794, by one Maurice Reynolds, assistant of Reuben Slaughter, who was the surveyor of Kanawha county at that time ; the survey of the 30,000 acres (for Work and Corran) was made on the 10th of January, 1795, by one Charles Ferry, who was also an assistant of the said Reuben Slaughter, but who was another and different person from Maurice Reynolds, the assistant who made the survey of the 40,000 acres for Skiles. The survey of the 27,000 acres was made by Ferry on the 12th of March, 1795 ; the survey of the 19,500 acres was made by Ferry, and bears date on the 2d of March, 1795, and the survey of the 32,097 acres, bearing date on the 20th of May, 1795, was made by one William McCreary, who appears to have been also an assistant of the said Slaughter, but was another and different person from the assistant who made the survey of the 40,000 acres for Skiles, and from him who made the 30,000 acres, the 27,000 acres, and the 19,500 acres, the other surveys referred to.

Thus it will be observed, that although the grants of the 27,000 acres, the 30,000 acres, the 19,500 acres, and the 32,097 acres were all prior in date to that of the defendants' 40,000 acres, yet that the surveys on which they were founded were all junior, in point of time, to that of the 40,000 acres, and were all made by other and different surveyors than the one by whom the survey of the 40,000 acres was made and returned. The court, however, permitted those junior surveys, made at different periods, ranging from three months to seven, from the time when the 40,000 acre survey was made,

19

and by different officers from the one who made the survey last named, to go to the jury in connection with the grants issued upon them, not merely as evidence of title outstanding in others superior to that under which the plaintiffs claimed, but also as evidence competent and proper to identify and locate the survey of 40,000 acres claimed by the defendants.

It is presumed that this ruling was made upon the authority of the case of *Overton's Heirs* vs. *Davison*, 1 Gratt., 211. It is submitted that it was an entire misapplication, amounting to total perversion, of the principle laid down by the court in that case.

It is true that in *Overton's Heirs* vs. *Davison*, the court of appeals held that on the question of the locality and identity of the survey under which the demandants in that case claimed, surveys made for other parties *about the same time, or recently thereafter, by the same surveyor,* of coterminous or neighboring tracts upon which grants had issued from the commonwealth, were proper evidence touching such locality and identity, unless plainly irrelevant. What was meant by the court by the expressions, "about the same time" or "recently thereafter," must be deduced from the case itself. The surveys which were offered in evidence for the purpose of giving locality to the survey under which the demandants claimed, were both made in the same month of the same year in which the demandants' survey was made. It was made in the month of April, 1785, but the day of the month on which it was made is not given. The survey of Thomas, one of the two offered in evidence, was made on the 28th of April, 1785, and the survey of Lewis, which was the other, was made on the 29th of April, 1785. Thus the surveys offered in evidence were made within a few days of that whose identity and locality they were offered to prove, and all that can be deduced from the case is, that surveys made within a few days, less than thirty, of that whose identity is sought to be established, are admissible in evidence unless plainly irrelevant. Surely it cannot be maintained that under the authority of that case the survey of the 32,097 acres made seven months after the 40,000 acre survey, or the survey of 19,500 acres, or that of the 27,000 acres, both made

some five months afterwards, or even that of the 30,000 acres made some three months afterwards, could be received in evidence to give locality to the tract of 40,000 acres. There is nothing in the opinion of the court to warrant the extension of the meaning of the expressions, "about the same time" or "recently thereafter," so as to cover periods so much greater than that which occurred in the particular case, and touching which they were employed. Whilst the court held that surveys made within a few days of the principal survey might be considered as made about the same time, or recently thereafter, within the meaning of the rule propounded, it is not to be taken that it would have considered a survey made some seven months after, or even one made some three months thereafter, as being within the rule, and reason and analogy are alike against it. There must be some limit to the scope of an expression used concerning a period of certainly less than thirty, and probably less than ten days; and where is it to be found if you shall hold that seven months, or even three, can be embraced within it? Surely there is not that savor of recency about a survey made seven months, or five months, or even three months, after the principal one which it is intended to illustrate, which should impart to it the character of legal and competent testimony on that ground alone, whilst it is confessedly *res inter alios acta*, and as such otherwise legally inadmissible. After such a period it could not be in any sense, or by any stretch of legal intendment, a part of the *res gestæ*, nor could the making of such subsequent survey tend, by any natural process of deduction, to illustrate the identity of the former.

Again, according to the opinion of the court of appeals, the subsequent surveys, to be admitted in evidence, must have been made by the *same surveyor*. What is the principle of the admissibility of such evidence indicated by this requirement? Manifestly it is that as the surveyor who does the work in the field of meting and bounding the survey which he makes, is necessarily personally acquainted with its lines and corners; if the principal survey and those which are sought to be used to illustrate it were all made by the same surveyor, the presumption is that he personally knew the lines and corners of them all; and if in the subse-

quent surveys he has called for the principal survey, and if the former are identified and located, then they will furnish legitimate aid in identifying and locating the latter, and will be competent and proper evidence for that purpose upon strength of the supposed personal knowledge of the surveyor who made them all, of their respective lines and corners. But this principle is manifestly founded upon the personal knowledge of the surveyor, and can have no application to the case in which the surveys sought to be used as evidence to give location to the principal survey, although they all chanced to be assistants of the same principal surveyor. Neither Slaughter, the principal surveyor, nor Ferry nor McCreary, his deputies, who made the subsequent surveys, can be presumed to have had any such personal knowledge of the lines and corners of Skiles' 40,000 acre survey made by Reynolds, as would impart to the certificates of Ferry and McCreary of those subsequent surveys, the character and dignity of evidence as to the lines and corners of the 40,000 acre survey against third persons, strangers alike to all of said surveys and those claiming under them. The law makes these subsequent surveys evidence, not because of the official character of the principal surveyor, or of the relation between him and his deputies or assistants, or of that between the assistants themselves, but because of the personal knowledge necessarily possessed by, or at least imputed to, the particular person who made both them and the particular survey. Had the subsequent surveys offered in evidence to identify Skiles' 40,000 acre survey, been made by Reynolds as assistant for Slaughter, they would have been properly admitted under the rule propounded in *Overton* and *Davison*, not because he was the deputy of Slaughter, in whose time they were all made, or in virtue of the office, but because he was the same deputy—the same man—who made them all, and is presumed to have had a personal knowledge of the lines and corners of the 40,000 acre survey made also by himself, when he called for them in his certificate of the subsequent surveys. That Reynolds, Ferry and McCreary were all deputies of Slaughter, did not, by any legal necessity or intendment, impart to Slaughter, or to Ferry, or McCreary, any such actual knowledge of the lines or corners of a survey made by

Reynolds, as such deputy, as would make a subsequent survey made by Slaughter himself, or by Ferry or McCreary, though calling for Reynolds' survey *as they found it on the surveyor's book*, legitimate evidence as to the lines and corners of the survey made by Reynolds. It may very well have been, and probably was the fact, that they knew nothing personally of the lines and corners of the survey made by Reynolds. They may have adopted them for subsequent surveys, just as they found them described in the survey returned by Reynolds.

That the admissibility of another survey made about the same time—*i. e.*, either recently before or recently after the principal survey, and by the same surveyor, to establish the identity and locality of the principal survey, is founded upon the idea of actual or supposed knowledge of the surveyor who made it, is apparent from the nature of the subject and from the terms in which the rule is propounded in *Overton* and *Davison*. It is evidence because it is a record or entry of an officer, regularly made in the discharge of his official duty, and of facts that occurred in his presence or within his personal observation. 1 Stark. Ev., 242. If the entry be of facts that did not occur in the presence of the officer making the entry, it is not evidence of such facts. 1 Greenleaf Ev., § 493. *Doe* vs. *Bray*, 8 B. & C., 813. 1 Stark. Ev., 243. And an entry, though official, is not evidence of facts not required to be recorded in it. 1 Greenl. Ev., § 493. Now a certificate of a survey made by a different surveyor from the one who made the survey which it is sought to identify by the former, can satisfy none of these requirements, although both surveyors happened to be deputies of the same principal surveyor. It was not necessary to the validity of the subsequent survey, that the lines and corners which it called for should be recited as those made for a previous survey, nor were those lines and corners marked or made such in the presence of the surveyor who made the subsequent survey, as they were so made and marked at a different time, and by another person. And, according to the rule as propounded by the court, the survey offered in evidence must have been made about the same time, recently before or recently after that which it is to be used to illustrate, and must have been made by the same surveyor. It must not have been the work of a different sur-

veyor, because he would not necessarily have any personal knowledge of the work of the other who had made the survey sought to be identified. and if they were both by the same surveyor, they must have been made about the same time, because if the second were made after an interval of time greater than a few days, or certainly a brief period, the law will not trust the " uncertain testimony of slippery memory," and will exclude the testimony altogether.   *Countess of Rutland's Case,* 5 Rep., 25.

The case is clearly, therefore, not within the rule of *Overton* and *Davison*, and we have the authoritative expression of opinion of the court of appeals repeated in several cases, that the rule as to the admissibility of this confessedly exceptional species of evidence should not be extended further than it has been heretofore carried by the courts.   *Smith's lessee* vs. *Wolf*, &c., (decided in September, 1852, but not reported.)   *Stinchcomb* vs. *Marsh*, 15 Gratt., 208.   See also *Smith & al.* vs. *Chapman*, 10 Gratt., 455.   *Clements* vs. *Kyles*, 13 Gratt., 468.

2. The court erred in permitting the plat and certificate of the survey made by Mathews to go to the jury as competent evidence on the question of the identity and boundary of the 40,000 acres under which the defendants claimed the premises in controversy.

This plat and survey were made by Mathews, who was one of the commissioners of forfeited and delinquent lands for the county of Kanawha, in the course of the proceedings touching the forfeiture and sale of the 40,000 acre survey made for Skiles.

The defendants claimed title under the grant to Skiles, and it was, of course, competent for them to connect themselves with the patentee by shewing the record of the proceedings resulting in the sale of the land as forfeited, their purchase thereof, and the deed made to them by the commissioner, under the order of the court; and if the survey made by Mathews pending the proceeding, became a part of the record, it was competent for the defendants to exhibit it to the jury as a part of the record, but only for the same purpose as the entire record, to wit, to connect themselves with the patentee.   But the defendants were not content

to read it for that purpose. They claimed to use it as evidence *per se* to fix the identity and boundaries of the Skiles survey as against the plaintiffs in this case, and the court sustained their claim, and held it to be competent evidence for that purpose. It is difficult or impossible to perceive in what view or on what principle this ruling can be defended. The object of the proceeding in which this survey was made was not under the law to obtain a decree of condemnation of the land as forfeited that would be binding as well on strangers as on the owner, as being a judgment *in rem*, nor does the order of sale made by the court, with the confirmation of the sale and the deed to the purchaser, under the order of the court, have that effect, for this court has decided that, notwithstanding all these, the owner of the land may, in ejectment against parties in possession, and who rely on the decrees and orders of the court, in such proceeding, shew that he had paid the taxes on the land, and that, in point of fact, it was not forfeited. *Twiggs* vs. *Chevallie,* not yet reported. Still less was it the object of such a proceeding under the statute, to ascertain and fix the locality and boundaries of the land supposed to be forfeited by a decree in the nature of an adjudication *in rem*, that was to be conclusive evidence as against strangers. For the purposes of its action, the court assumes the forfeiture and identity of the land as reported by the commissioner, leaving both or either to be contested in any subsequent proceeding, even by the owner himself, and, *a fortiori*, by strangers to him and his title, and to the proceeding in the court.

Whilst, then, the entire record of the proceeding before the court, including the survey made by Mathews, might properly have been read to the jury for the purpose of connecting the defendants with the patentee, the survey, with or without the rest of the record, was no evidence as against the plaintiffs, claiming under a distinct title for any other purpose.

It was made some forty-six years after the original survey made by Reynolds, without notice to the plaintiffs, against whom it is used as evidence, and in their absence, and in a proceeding to which they were entirely strangers.

It stood upon no different footing than a survey made in a

cause in which the plaintiffs were neither parties nor privies, or a private survey, neither of which, as all will agree, could have been given in evidence against the plaintiffs in this cause, to fix the locality and boundaries of the survey under which the defendants claimed title to the premises. The survey made by Mathews amounted to no more than a mere recital in the course of the proceeding for the sale of the property, as to the locality or identity of the tract patented to Skiles, and could have no other or greater legal effect as against the plaintiffs in this action than a recital to the same effect in a deed of conveyance from Skiles to the defendants, had the title been transferred in that way directly from Skiles to them, instead of by the decree of the court and the sale and conveyance of the commissioner.

In neither case would such recital be considered evidence of the fact recited as against third persons.

It is submitted, therefore, that the court clearly erred in suffering the jury to receive and treat the survey made by Mathews as evidence to fix the locality and boundaries of the Skiles survey.

And on both grounds of error assigned the plaintiffs insist that the judgment of the circuit court should be reversed and a retrial directed.

MAXWELL, J.    This was an action of ejectment in the circuit court of Kanawha county. The jury found a verdict for the defendants, on which the judgment of the court was rendered, from which judgment the plaintiffs have appealed to this court. The plaintiffs claimed title under a grant from the commonwealth bearing date March 1st, 1860. The defendants claimed title under a grant from the commonwealth of Virginia to Jacob Skiles, for a tract of 40,000 acres of land, bearing date on the 11th day of July, 1798, founded upon a survey made on the 24th day of October, 1794, by Maurice Reynolds, assistant for Reuben Slaughter, surveyor of Kanawha county. For the purpose of showing, and to aid in showing, the identity of the said tract of 40,000 acres under which the defendants claimed, they gave in evidence to the jury copies of the following surveys, together with the grants which issued thereon respectively: A survey bearing date

March 12th, 1795, made by Charles Ferry, assistant to Reuben Slaughter, surveyor of Kanawha county, for John Steel for 27,000 acres of land, which survey calls for "a post in a line of Jacob Skiles's survey of 40,000 acres; thence with his lines south 45, west 520 poles, to white oak and hickory; south 60, east 160 poles, to a beech and gum; south 30, east 200 poles, to a white oak and poplar; south 20, east 80 poles, to a sugar and beech; south 41, east 520 poles, to two beeches; south 29, east 132 poles, to two beeches; south 30, west 80 poles, to a cucumber tree on the waters of Campbell's creek; south 25, east 180 poles, to two beeches and a white oak; thence leaving Skiles's line," &c. A survey bearing date January 10th, 1795, made by Charles Ferry, assistant to Reuben Slaughter, surveyor of Kanawha county, for Andrew Work and Robert Corran, for 30,000 acres of land, which survey calls for a corner to the 27,000 acre John Steel survey, "in a line of Jacob Skiles's survey of 40,000 acres, and with his line, north 45, east 1,675 poles to two beeches and a gum corner to Skiles's and also corner to a survey of 50,000 acres made for John Barclay," &c. A survey bearing date March 2d, 1795, made by Charles Ferry, assistant to Reuben Slaughter, surveyor of Kanawha county, for John Steel, for 19,500 acres of land, which survey calls to begin "at a sugar tree, beech and maple on a fork of Bell creek, about a half a mile up said fork from the road that leads from Gauley to the boat yard, being corner to Skiles's survey of 40,000 acres, and also corner to a survey of 50,000 acres made for John Barclay," &c. A survey bearing date May 20th, 1795, made by William McCreary, assistant to Reuben Slaughter, surveyor of Kanawha county, for Jacob Skiles, for 32,097 acres of land, which survey calls to begin "at a sugar tree, beech and maple on a branch of Bell creek, corner to said Skiles's survey of 40,000 acres and Barclay's 50,000 acre survey," &c. After these surveys and the grants founded thereon, were given in evidence, the plaintiffs moved to exclude them from the jury as incompetent evidence to prove, or aid in proving, the identity of the said 40,000 acre tract of land granted to Skiles, or to prove, or aid in proving, its corners and lines, or any one of them, or the bounds thereof. But the court refused to reject the testimony of said surveys

or grants, or any or either of them, as incompetent evidence to prove, or aid in proving, the identity of said 40,000 acre tract of Skiles, or to prove, or aid in proving, its corner lines and bounds thereof, but permitted each and all of said surveys and patents to go to the jury as evidence, and proper and competent for that purpose, and left its weight to the jury. To which the plaintiffs excepted. It is insisted here for the plaintiffs and appellants, that the circuit court erred in permitting the jury to receive and consider the surveys and grants of the said tracts of land, as competent and proper evidence to establish the identity of the 40,000 acres surveyed and patented to Skiles, under which the defendants claimed. The reason assigned by the appellants is that the surveys of the four tracts of land for 27,000 acres, 30,000 acres, 19,500 acres and 32,097 acres respectively, were all made by surveyors other and different from the surveyor who made the survey of the 40,000 acre tract. In the case of *Overton's heirs* vs. *Davison*, 1 Gratt., 211, the supreme court of appeals of Virginia held that in a controversy concerning the boundary or locality of a tract of land granted by the commonwealth, pursuant to a survey, the calls and description of a survey made by the same surveyor about the same time, or recently thereafter, of a coterminous or neighboring tract, upon which last-mentioned survey a grant has also issued from the commonwealth, whether to a party to the controversy or a stranger, is proper evidence upon such question of boundary or locality, unless plainly irrelevant; to have such weight with the jury as under all the circumstances they may consider it entitled to. In the case of *Clements* vs. *Kyles*, 13 Gratt., 468, an effort was made to extend the doctrine of *Overton* vs. *Davison*.

To identify and locate a certain wood survey, two other grants upon surveys not made by the same surveyor who made the wood survey, were allowed by the circuit court to be given in evidence, but the court adhered to the rule laid down in *Overton* vs. *Davison*, and reversed the circuit court. These are the only two cases to which our attention has been called, decided by the Virginia courts, in which the question has been raised. The refusal of the court in the case now before us to exclude the surveys and the grants founded

thereon, from the jury, as evidence tending to locate the survey in dispute, was in violation of the rule laid down in the case of *Overton* vs. *Davison,* as limited and explained by the case of *Clements* vs. *Kyles,* and therefore erroneous, as no principle or precedent can be found for extending the rule any farther than it is laid down in *Overton* vs. *Davison.*

A point is made by the counsel for the appellants on the supposed improper admission of the plat and survey of Mathews, commissioner of delinquent and forfeited lands, but the record does not show that any objection was made in the court below, so as to raise the question here.

The judgment will have to be reversed with costs and the cause remanded.

Berkshire, P., concurred with Maxwell, J.
Judge Moore declined to give any opinion.

JUDGMENT REVERSED.