# CHARLESTON.

## LEWIS *v.* YATES.

Submitted March 14, 1911. Decided October 14, 1913.

1. BOUNDARIES—*Surveys—Monuments.*

   A subsequent survey calling for lines of the older one is not a monument thereof, and the call therefor is only a circumstance, admissible under some conditions, as evidence of the location of the lines of the older survey. (p. 845).

2. SAME—*Establishment.*

   One or more monuments of a tract of land having been ascertained, the courses and distances are entitled to controlling effect in the location of others as to the identity of which the evidence is slight, circumstantial and conflicting. (p. 846).

   (WILLIAMS and LYNCH, JUDGES, absent).

Error to Circuit Court, Greenbrier County.

Action by Cornelia A. Lewis against W. C. & James A. Yates. Judgment for defendants, and plaintiff brings error.

*Reversed and Remanded.*

*John Osborne,* for plaintiff in error.

*Henry Gilmer,* for defendants in error.

POFFENBARGER, PRESIDENT:

The report of the decision on a former writ of error in this case, found in 62 W.. Va. 575, fully discloses its nature and character and the main features of the evidence, and settles the principles involved. On the new trial then awarded, there was another verdict for the defendants on which judgment was rendered.

The argument submitted in support of the action of the court in refusing to set aside the verdict does not question the soundness of the principles enunciated and applied in the former decision. It abandons the argument in the former case founded upon conflict between the Patterson survey and the Banks survey lying to the northeast thereof, and the location of the Hamilton survey, as contended for on the former writ of error. It impliedly, if not expressly, admits the necessity, in the event of the adoption of the theory of the defendants, of either shortening lines of the Powell 470 acre survey, thereby reducing its quantity about one-half, or removing the Frogg and Wolfenbarger surveys a great distance to the southwest, contrary to the location thereof, as shown by monuments that are practically unquestioned.

The location of the irregular southern boundary line of the Patterson survey in accordance with the claim of the defendants, as controlling the location of the Powell 470 acre survey, is vigorously insisted upon. The Patterson survey lies east of the Powell survey and is one of its monuments, or, at any rate, its northwest corner and southwest corner are called for as corners of the 470 acre Powell survey. The beginning point of the Patterson survey is its southeastern corner, where two hickories and poplars on a hillside are called for. The line runs thence S. 80 W. 52 poles to a black oak, white oak and hickory, N. 54 W. 34 poles to a black oak, S. 80 W. 18 poles to a double maple, and S. 30 W. 30 poles to two white oaks, the southwest corner. The survey was made April 29, 1791. The two Powell surveys were made March 23, 1798. The 400 acre one is de-

scribed as running with lines of the Patterson survey, above set forth, and calls for their courses, distances and timber. On Feb. 7, 1799, what is evidently a part of the Powell 400 acre survey was again surveyed for Harrison and Dixon. Their survey was estimated to contain 106 acres and purports to run with this irregular southern boundary of the Patterson survey, calling for the same courses, distances and timber. Though made about one year later than the two Powell surveys, it does not call for the Powell 470 acre survey which corners on the Patterson 200 acre survey at the same point at which it claims to do so. Another Harrison and Dixon survey, calling for 205 acres, bears the same date as the one just described. According to its description, it adjoins the Patterson survey and the other Harrison and Dixon survey on the east, and comes out of the Powell 400 acre survey. These two Harrison and Dixon surveys, having a combined acreage of 311 acres, taken out of the Powell survey of 400 acres, have been located, and their location harmonizes with the contention of the defendants, if the northern line of the smaller one is identical with the southern boundary line of the Patterson survey. To make them coincide, however, it is necessary to shift the Powell 470 acre tract nearly 100 poles west of the location given it by its southeastern line run from the corner of the Wolfenbarger tract, and nearly or quite 50 poles south, and thus shift the location of the Frogg and Wolfenbarger land to the south and west equal distances. Otherwise, it would shorten some of the lines of the Powell 470 acre tract, one of them nearly 100 poles, and greatly reduce its quantity. The line called for between the northeastern corner of the small Wolfenbarger tract and the southwest corner of the Patterson, in the surveys of the 470 acre and 400 acre Powell tracts, is described therein as being 120 poles long. In the Harrison and Dixon survey, the distance from the small Wolfenbarger tract to what is therein called the corner of the Patterson survey, is given as 26 poles. All of these inconsistencies and conflicts argue very strongly a mistake in the call of the Harrison and Dixon survey for the southern boundary of the Patterson survey, or a subsequent wrong location of the Harrison and Dixon survey.

The last named survey was shown to have subsequently passed into the ownership of one Hayes, and in a deed from Nathan Henning to Chas. A. Stuart, purporting to convey the Powell 470 acre tract, it is described as beginning at two white oaks, corner to the Hayes land. This is one of the circumstances strongly relied upon in the brief for the defendants in error. In addition to this, it was shown in evidence that a small white oak was found at the point claimed by the defendants as the location of the southwest corner of the Patterson survey, bearing ancient marks on one side thereof, the side toward the corner as claimed by the plaintiff, and counting more than 100 years. One or more of the surveyors said the annulations indicated an age greater than that of the Patterson survey. There is no proof that this tree was marked as a corner tree, and it stands only 15 or 20 feet from the 120 pole line of the Powell Survey, and may have been a tree marked for that line. Two witnesses testify that two trees stood at that point at one time, but no ancient marks on them are shown other than the one just mentioned. At another place at which a double maple is called for in the Patterson survey and also in the Harrison and Dixon survey, some maple sprouts and an old rotten fallen maple tree were found, but, whether it was a double maple, or whether a double maple ever stood at that point, is not shown, nor does it appear that the old fallen tree bore any marks. At the southwest corner of the Patterson survey, as located by the plaintiff, no tree was found which answers the description given in the survey. Near the southeast corner of the Patterson survey, as located by her, an old marked tree was found and the ground corresponded well with that called for in the description. At the northwest corner of that survey, as she locates it, there was found an old hollow Spanish oak or black oak, bearing an ancient mark, the age of which could not be ascertained on account of the decayed condition of the tree. The grant calls for a Spanish oak as that corner. South of that point nearly on a line between it and the southwest corner as claimed by the plaintiff, another tree was found bearing an ancient mark. For the southeastern, northeastern and northwestern corners of the location of the

Patterson survey, as claimed by the defendants, nothing whatever was found indicative of the existence of monuments.

The erroneous description, if it was such, in the deed from Nathan Henning and wife to Chas. Stuart, relating to the beginning corner, is not conclusive. In other words, if the Hayes corner was not the corner of the 470 acre Powell survey, granted to Wm. Donaldson, its erroneous designation as such in the Henning deed does not estop the plaintiff from showing the true location thereof. The deed purports to convey the whole of the Powell survey, and, with the single exception noted, calls for its courses, distances and monuments. The distance called for in it from the northeast corner of the small Wolfenbarger tract to the southwest corner of the Patterson survey, is 120 poles as in the original survey, and the deed described the land generally. as being the land granted to Wm. Donaldson and containing 470 acres. As between the parties to that deed, the general description would prevail over a particular one, if it comported with the intention of the parties and the particular one did not, as is the case here. *Mylius* v. *Lumber Co.,* 69 W. Va. 346; *Baxter* v. *Tanner,* 35 W. Va. 60; *Smith* v. *Chapman,* 10 Gratt. 445; *Andrews* v. *Pearson,* 68 Me. 19; *Marshall* v. *McLean,* 3 Ia. 363. Not being conclusive between the parties to the deed themselves, such mistake would certainly not conclude the grantee in favor of strangers. Manifestly, this recital is nothing more than a circumstance, bearing on the question of location, and entitled to only such weight as it may have under the rules of law governing the trial of issues of fact. It is supplemented by similar evidence found in the survey of the smaller Harrison and Dixon tract. The Patterson survey does not call for the Harrison and Dixon survey. The latter, being later, calls for the former. If under some misapprehension, a tree was taken as the corner of the Patterson survey which was not in fact such corner, but only a tree in the line of the prior survey, such erroneous adoption of a line believed to be, and designated as, the line of the Patterson survey, is not conclusive. In other words, the Harrison and Dixon survey is not a monument or call of the Patterson survey, and the adoption of a line for the former as a line of the latter, which in fact is not

such line, amounts to no more than the conduct of strangers, which, in the absence of ascertainment of the true line of the Patterson survey, is a circumstance bearing on the issue and nothing more. Surveys of coterminus or neighboring tracts, made by the same surveyor, about the same time, or recently thereafter, are admissible in evidence in such a controversy as this. *McMullin* v. *Lewis,* 5 W. Va. 144; *Clements* v. *Kyles,* 13 Gratt. 468; *Overton* v. *Davisson,* 1 Gratt. 211. But such evidence does not reach the dignity nor have the probative force of established monuments. It is merely circumstantial, and its admissibility has been denied when the coterminus or neighboring surveys were not made by the same surveyor and are many years subsequent in date. *Clements* v. *Kyles,* cited; *McMullin* v. *Lewis,* cited.

Our analysis of the evidence and definition of its character show lack or failure of certain identification of any of the lines or corners of the Patterson survey, the location of which is relied upon by the defendants as the vital question in the case. Plaintiff's evidence as to identity of monuments is also inconclusive. The evidence submitted by the parties to sustain their respective contentions is about the same in character and quantity, in so far as it relates to the identification of monuments called for in the Patterson survey. That submitted by the defendants is supplemented by conduct of strangers and a recital in the Henning deed, as mere circumstances, not in any sense conclusive nor strongly probative. If nothing else appeared, the verdict of a jury founded upon this evidence would be unimpeachable and beyond the power of disturbance by the trial court. But, to allow a verdict for the defendants to stand on such evidence, under the circumstances disclosed here, would permit the jury to disregard and ignore practically the only evidence indicating the true location with any degree of certainty. As has been shown, the location of the Patterson survey, as contended for by the defendant, disarranges the entire system of surveys and does violence to the calls of the Powell surveys. It would reduce the quantities of both, and shorten specific calls and distances. The location of the Wolfenbarger tract is well established. Its northeast corner is a fixed and

certain monument of the Powell surveys. Giving effect to the call for course and distance from that corner, as the law requires, in the absence of an ascertained controlling monument, it fixes the southwest corner of the Patterson survey at about the point contended for by the plaintiff, and sustains the declared relation of that survey to the other Powell survey, the Frogg tract and Wolfenbarger tract, and its specification of quantity. An overwhelming preponderance of evidence in favor of the plaintiff is thus clearly shown, making it the duty of the trial court to set aside the verdict, on the request for such action.

For the most part, the court's rulings on instructions were correct. It erred, however, in refusing one instruction asked for by the plaintiff, and designated as No. 2. In effect, it would have been a direction to find for the plaintiff, for it would have required the jury to find the plaintiff entitled to so much of the 57 acre tract of land as lies within certain designated lines, run by course and distance from the northwest corner of the Patterson survey, as located by the plaintiff. As the evidence for the defendants was insufficient to sustain a verdict in their favor, for reasons already stated, it was the duty of the court to direct a verdict for the plaintiff, if asked to do so, or to give the jury a peremptory instruction to find for the plaintiff. Such is the character of the instruction the court refused. As there was some evidence tending to sustain the theories of instructions Nos. 2, 3 and 4, given for the defendant, the court properly overruled the objections to them. Evidence insufficient to sustain a verdict may, nevertheless, justify the court in giving instructions embodying the hypotheses it tends to establish. *State v. Clifford,* 59 W. Va. 1.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*