GAULEY COAL LAND COMPANY, *A Corporation, et al.*

*v.*

W. A. O'DELL, *et al.*

(No. 10995)

Submitted September 23, 1959. Decided November 3, 1959.

*R. J. Thrift, Jr., Summers H. Sharp,* for appellants.

*Charles E. Mahan, J. H. White, John B. Breckinridge,* for appellees.

BERRY, JUDGE:

This is a suit in equity instituted in the Circuit Court of Nicholas County, West Virginia, by the appellees, plaintiffs below, Gauley Coal Land Company, a corporation, New Gauley Coal Corporation, a corporation, and Imperial Smokeless Coal Company, a corporation, against the appellants, defendants below, W. A. O'Dell, Anna Jane O'Dell, Loren W. O'Dell, Dayton O'Dell, Ada O'Dell Poling, J. W. Martin, and Harry Smith. The parties will be referred to hereinafter as plaintiffs and defendants, as designated in the trial court.

The plaintiffs, Gauley Coal Land Company and New Gauley Coal Corporation own in fee simple undivided interests of 78% and 22% respectively, a tract of land consisting of approximately 243 acres known as the "J. O. McClung Homeplace", which includes a 5 acre tract on the southeast side of same, known as the "J. O. McClung Homeplace Extension", and the plaintiff, Imperial Smokeless Coal Company, is lessee of the land in question.

The plaintiffs alleged in their bill of complaint that defendants owned land adjoining the plaintiffs, the exact location unknown, but that defendants are guilty of trespassing on a part of the 243 acre tract to which they had a clear and legal title and cut timber on same; that defendants are not in possession of same; and the bill prays for an injunction, that the defendants be restrained from trespassing on the land of plaintiffs, from cutting timber thereon, that the title of plaintiffs be quieted and that cloud on the title be removed therefrom and for an accounting. The defendants demurred to plaintiffs' bill of complaint and amended bill of complaint, which amended bill of complaint had added Anna Jane O'Dell as a party defendant due to the fact that she was one of the grantees to the property in question, for the reason that

the bill and amended bill show that the matter in controversy involved a disputed title to real estate and that equity is without jurisdiction to determine same, which demurrer was overruled by the trial court and a temporary injunction was granted. Thereupon, the defendants, W. A. O'Dell and Anna Jane O'Dell, filed an answer stating that Loren W. O'Dell, Dayton O'Dell and Ada O'Dell Poling have no interest in the matter in controversy; that defendants W. A. O'Dell and Anna Jane O'Dell are the owners of the residue of the 250 acre tract of land consisting of about 150 acres; that they have had actual possession of said land for many years under their deeds; that they employed J. W. Martin and Harry Smith to go upon said land belonging to the defendants and cut timber thereon. Defendants, other than W. A. O'Dell and Anna Jane O'Dell, took no part in the case, and the word "defendants" used herein refers primarily to those two. The defendants also moved the court to direct an issue out of chancery for a trial by a jury because the testimony of plaintiffs and the testimony of the defendants would raise a serious conflict in evidence introduced as to the boundary line between their property. This motion was overruled by the trial court. The trial chancellor proceeded to hear the evidence in the case at the completion of which he found in favor of the plaintiffs and granted to them the relief prayed for in their said bill of complaint and amended bill of complaint, fixing the boundary of plaintiffs' 243 acre tract by metes and bounds, adopting and making a part of the decree a map which was introduced into evidence by one of the plaintiffs' witnesses, making the temporary injunction permanent, dismissing the defendants, Loren W. O'Dell, Dayton O'Dell and Ada O'Dell Poling, but no accounting was decreed. The description of the 243 acre tract in question, contained in the decree, is apparently in conflict in some particulars with the original map which was made a part of the decree.

The ground of equity jurisdiction relied upon by the plaintiffs in this case is that they have a good and per-

fect title to the land in question and that the defendants do not have title or color of same; that plaintiffs are in possession and have been in possession of said land for many years and defendants are not in possession and have not been in possession of the land in question. The demurrer to the bill and amended bill was properly overruled by the trial court because the bill alleged that the plaintiffs had a clear legal title and that the defendants were not in possession and did not have a legal title, and the demurrer admitted all facts well pleaded. *Coal & Coke Co.* v. *Bragg*, 75 W. Va. 70, 83 S. E. 190. However, the question of title and boundary line between plaintiffs' and defendants' land was clearly raised in the answer filed by the defendants and such defense may be properly raised by an answer and it will defeat the jurisdiction of a court of equity as to the title at whatever stage of the suit it appears. *Gas & Electric Co.* v. *Moore*, 81 W. Va. 164, 93 S. E. 1051.

The record in this case is lengthy, consisting of about 1000 pages, and the evidence is conflicting, unclear and inconsistent in some instances. However, it is quite clear from the record that the plaintiffs claim one line as a boundary line and the defendants claim another between certain properties which were conveyed many years ago. The difference between the two lines is a distance of some 750 feet. If the plaintiffs' contention is correct, the defendants were trespassing on plaintiffs' land by cutting timber thereon, but if the defendants' contentions are correct they were not guilty of trespassing because they were cutting timber on their own property. There are two parallel lines shown on a map introduced by the plaintiffs marked Exhibit "A" about which there is no controversy between the parties to this suit. These lines, one known as the Price Line, located on the northwest side of the map and the other known as the Moore-Welch Line, which is located on the southeast side of the map, are over 7000 feet apart. The entire acreage between these lines and other connecting lines indicated on the map consists of about 2000 acres.

The first deed having a bearing on the present controversy was made in 1859 from S.McD. Moore to Reubin Siers. This tract of land was surveyed by the plaintiffs' engineers, and the beginning point on the Price Line shown as point 3 on plaintiffs' Exhibit "A" calls for two hickories on Colt Ridge. Point 3 is not in controversy and is a fixed point agreed upon by both plaintiffs and defendants in this suit. However, the plaintiffs' engineers, in surveying this tract, overran in a southwest direction the distance called for by about 800 feet. They overran the next line which runs southeast by about 700 feet, the reason being given that it was an attempt to locate monuments. It is not clear whether or not they located the monuments called for in the deed with any degree of certainty in this survey. However, it is clear that if this survey had been run southwest for the distance called for in the deed, 291 poles, and then run southeast for the distance called for in the deed, 275 poles, it would have crossed Hominy Creek, as called for in the deed, at about 80 poles from the end of the 275 poles called for where a monument of a white lynn and dogwood was located. Apparently the white lynn and dogwood were not located. These trees may have been destroyed during the period of about 100 years, but Hominy Creek would not have been destroyed during this time. If Hominy Creek is accurately located on the map, the crossing of Hominy Creek, as called for in this deed, could not have been from the northwest corner because the Price Line is fixed and it would be necessary to move the Price Line southeast over 2000 feet in order to cross the creek at a point 80 poles from the Price Line, and the crossing line would then extend south of the bottom line of the survey about 2000 feet beyond the end of the southeast line, contended for by plaintiffs, and terminate in other property a little over 500 feet northwest of the agreed Moore-Welch Line. The next call in this deed is a parallel line to the Price Line, with the first call running northeast 43 degrees for 291 poles to a stake near a maple and chestnut oak. The plaintiffs' survey shows the maple and chestnut oak some 750 feet southeast of

where the parallel line would terminate under defendants' view, and in order to reach there would require a call for about north 52 degrees east. If this line came to the maple and chestnut oak as shown on plaintiffs' map, Exhibit "A", it would support the plaintiffs' contention, but, if it came to a point 750 feet northwest of the maple and chestnut oak, it would support the defendants' contention. However, under plaintiffs' version, the lines would not be parallel as called for in the deed. The closing line is northwest 275 poles to the point of beginning.

The next deed to be considered in this overall controversy is a deed made in 1863 from Moore, the same grantor as in the above stated deed made in 1859 to M. R. Hereford and James Collison, out of which comes the plaintiffs' 243 acre tract in question in this suit. The first point in this deed is the same point as is in the deed of 1859, about which there is no question. The first line runs from said point with the Siers Line, called for in the last call of the 1859 deed, with the same distance of 275 poles and the course reversed, being southeast to a chestnut and chestnut oak corner. This monument was found and located as a chestnut and down chestnut oak and is still there. The next call in this deed is northeast 291 poles to *2 gums and a chestnut oak*, which would fix this corner at about 750 feet northwest of where the plaintiffs claim their boundary is located. The next call in this deed is northwest 275 poles to a chestnut oak on a dividing line which is the Price Line, thence 291 poles to the point of beginning.

Another deed over which there was considerable controversy involved a 16 acre tract of land conveyed by one Shawver to McClung and was one of several tracts conveyed in 1891 by J. O. McClung to H. H. Fay et al. This 16 acre tract started at two chestnut oaks referred to in the above deed of 1863 and all 4 calls in this deed would place this 16 acre tract northwest of the line claimed by the defendants and would support their contention. However, the second call in this deed is to a maple and chestnut oak on the line claimed by the plaintiffs which is

some 750 feet southeast of the beginning point on the line claimed by the defendants. The call from the beginning to the second point is north 45 degrees east 46 poles. To reach the second point claimed by the plaintiffs, the course would have to be southeast. The next course in the deed is northwest but to support the plaintiffs' contention it would have to be northeast. The next course in the deed is southwest and to support the plaintiffs' contention, it would have to be northwest. The next course is southeast and to support the plaintiffs' contention it would have to be southwest. In other words, all of the courses would have to be entirely changed, not merely reversed, in order to support plaintiffs' contention that this 16 acre tract lies southeast of the line claimed by the defendants. But to support the defendants' claim, all courses fit in correctly and the only discrepancy is in the second call for a maple and chestnut oak corner. Some of the corners may have been destroyed but the calls remain. Calls, if they can be applied and harmonized in any reasonable manner in determining boundaries of a tract of land cannot be disregarded and as few calls or descriptions should be disregarded as is possible. 8 Am. Jur., Boundaries, § 52; *Lewis* v. *Yates,* 72 W. Va. 841, 79 S. E. 831.

The next question to be considered in this case, and upon which counsel for both plaintiffs and defendants agree that the case turns, is the location of the southeast corner of the Hereford-Collison Tract. The plaintiffs have located this point on their map, Exhibit "A", and designated it as point "1". The plaintiffs' testimony with regard to the location of this point is that a white oak and gum were located at this corner for many years and that numerous deeds call for the white oak and gum, but that in 1944 these monuments were destroyed by strip mining done by one of the plaintiffs, Imperial Smokeless Coal Company, and that a set stone was placed by a surveyor of another of the plaintiffs, Gauley Coal Land Company, where the white oak and gum stood. There is no question from the evidence in this case that many deeds

called for white oak and gum at this corner, one such deed being the deed from Perry H. Amick to H. H. Fay et als in 1892, and including deeds made by the plaintiffs to others, as well as deeds made by the defendants' predecessors in title which included the 5 acre tract extension to the J. O. McClung Home Place. However, the defendants claim that the white oak was not located at point "1" as shown on plaintiffs' map, Exhibit "A", but some 750 feet northwest. It must also be remembered that a white oak and gum were not called for in all of the deeds. In some it was a white oak or two white oaks, and in the original survey or deed from Moore to Hereford-Collison in 1863, within which the 243 acre tract of plaintiffs is located and which preceded all but one of the conveyances referred to herein, the point in question is called for as *two gums and a chestnut oak*. It is true that the defendants conveyed 2.5 acres apparently for a right of way for the Left Fork Fuel Company in 1954 and it calls for a beginning point at a set stone between the defendants' land and the plaintiffs' land and states that it is a part of the "99.5 acre" tract owned by the defendants, thus supporting plaintiffs' argument that defendants do not own 150 acres. However, the defendants explained this by claiming that the Left Fork Fuel Company prepared the deed in question and inserted the calls, monuments and descriptions, and that they also obtained or prepared a map or plat attached to the deed which defendants never saw.

The property of the defendants came out of a tract of land sold for delinquent taxes, conveyed by deed dated in 1879 from John A. Hamilton, Clerk of Nicholas County Court, to John B. O'Dell, and from a deed dated in 1880 by John B. O'Dell to Jacob O'Dell, which contained approximately 250 acres. Jacob O'Dell, father of the defendant W. A. O'Dell, conveyed about 150 acres, this being the residue of a 250 acre tract, to the defendant, Anna J. O'Dell, in 1924. The same land was conveyed by the defendants, Anna J. O'Dell and W. A. O'Dell to Ada White Poling and M. D. Poling in 1939, and the said

Polings reconveyed the same land to the defendants, Anna J. O'Dell and W. A. O'Dell in 1947. This traces the title to the land in question claimed by the defendants, although the description and acreage contained therein is uncertain from the evidence contained in the record. The defendants claim possession of the land in question as a part of their tract, the 150 acres being a residue of the 250 acre tract referred to herein, by virtue of ownership rights exercised by conveyances, leases and rentals from houses built thereon. If the defendants had possession of any part of the tract, they would have possession of all the tract. *Putnam Company* v. *Fisher*, 128 W. Va. 383, 36 S. E. 2d 681.

The plaintiffs contend that the defendants are estopped from denying title of lands in question to plaintiffs because they refer to point "1" on plaintiffs' map, Exhibit "A", in several conveyances and plats. Where the conveyances with attached plats, if any, were to strangers, not parties or privies to this suit, mere recognition by a grantor or his predecessors of a point in the conveyances would not technically be an estoppel unless other factors creating an estoppel were present; but said conveyances with any attached plats could, nevertheless, be used in evidence against the grantor or persons in privity with him. 31 C.J.S., Estoppel, §37; 19 Am. Jur., Estoppel, §28; *Hughes* v. *Cobb*, (Ga.) 23 S. E. 2d 701.

However, where the recitals are made in a deed between the two parties or their predecessors in title, the parties are bound by an estoppel. 7 Michie's Jurisprudence, Estoppel, §4; 8 Am. Jur., Boundaries, §84. In this case, the only deed that could be used as an estoppel would be the deed from Jacob O'Dell to J. O. McClung in 1895, wherein the 5 acre extension to the McClung Home Place was made, but this deed only refers to a white oak and gum, and the defendant, W. A. O'Dell, says that the white oak and gum were not located at point "1" on plaintiffs' map, but at another point which he says was pointed out to him by his father, Jacob O'Dell many years ago and which he observed as being located some

750 feet northwest of point "1" on plaintiffs' map, Exhibit "A".

From a review of the evidence in this case, it is quite clear that the question involved in this suit is to settle the title and boundaries of lands between the plaintiffs and defendants. This is clearly set out in the brief filed on behalf of plaintiffs where the issues are listed, and wherein it is stated that one of the issues is "What is the true location of the J. O. McClung 243 acres tract involved, including the 5 acre 'Homeplace Extension' and is the true location of that tract properly fixed on plaintiffs' Exhibit A (the Meece Map) or by the defendants' map, defendants' Exhibit 7." The decided cases in this state relative to this matter hold that equity does not have jurisdiction to determine such question. 10 Michie's Jurisprudence, Injunctions, §18. *Freer* v. *Davis, et al.,* 52 W. Va. 1, 43 S. E. 164.

There was no averment in this case that an action at law was pending or about to be brought to determine the title or boundary to the land in question, and equity has no jurisdiction to remove cloud upon title or to enjoin an alleged trespass on the disputed land in such case. *Barth* v. *Shepherd,* 80 W. Va. 218, 92 S. E. 317. It was held in the syllabus of *McDonald* v. *Boggs,* 97 W. Va. 201, 124 S. E. 680, that "Equity will not entertain a suit to remove cloud upon title to real estate, if the sole matter in dispute is the location of boundary lines, or to enjoin an alleged trespass on the disputed land, in the absence of an averment that an action at law is pending or is about to be brought to determine the title."

In the case of *Stickler* v. *Bays,* 116 W. Va. 463, 181 S. E. 717, it was held that where evidence in a suit to enjoin a trespass to real estate and to establish division lines between the parties disclosed a sharp controversy as to proper location of the disputed division line, equity, in the absence of an allegation that an action at law was pending or about to be brought to determine the title, would not have jurisdiction to determine the controversy.

In the case of *Lockwood* v. *Carter Oil Co.*, 73 W. Va. 174, 180, 80 S. E. 814, this Court stated: "It is settled law that if the main purpose of the suit is to settle title or boundary to land and no other grounds of equity exist, accounting and discovery of profits are merely incidents to the right of title, and equity has no jurisdiction of the controversy."

It is clear from the facts of this case and the law applicable thereto that equity does not have jurisdiction to determine the main issue in this case, the title to the property and the location of the boundary line between the parties. *Eakin* v. *Taylor*, 55 W. Va. 652, 47 S. E. 992. The main issue in this case should be tried on the law side of the court by a jury, unless waived by the parties, either by an action of ejectment or by the statutory procedure to determine boundary lines, as provided for in Code, 55-4-31.

A similar situation to the case at bar involving a disputed right of way where the controlling question in the suit involved the location of the disputed boundary line is found in the comparatively recent West Virginia case of *Kertesz* v. *Falgiano*, 140 W. Va. 469, 84 S. E. 2d 744. In that case a long protracted litigation was proceeded with on the equity side of the court to restrain the interference with the use of a disputed right of way, but the controlling question in the suit involved the location of the disputed boundary line. On appeal to this Court, the case was reversed and remanded for proper disposition on the law side of the court. Where it is shown, as indicated in the case at bar, that equity has no jurisdiction, this Court will reverse the decree but not dismiss the bill of complaint and will remand the cause to the trial court with directions that the case be transferred to the law side of the court to be tried by a jury if the parties so desire, with permission to plaintiffs to amend their pleadings.

For the reasons contained herein, the decree of the Circuit Court of Nicholas County is reversed and this case is remanded to that Court with directions that the

same be transferred to the law side of the court, as provided for in Code, 56-4-11, with the right granted to the plaintiffs to amend their pleadings if they so desire in order to conform with the requirements of an action at law of ejectment or with the statutory provisions of Code, 55-4-31, on the law side of the court, and with the right of the plaintiffs to proceed to obtain such equitable relief as may be ancillary to the trial of the case as may be proper.

*Decree reversed;*
*case remanded*
*with directions.*