JOHN SOMON

*v.*

MURPHY FABRICATION & ERECTION CO.

(No. 13648)

Decided March 1, 1977.

*Charles D. Bell* for appellant.

*Pinsky, Barnes, Watson, Cuomo & Hinerman, William E. Watson* for appellee.

MILLER, JUSTICE:

This case involves a disputed boundary line which encompasses an area of roughly 80 by 500 feet and draws us into the doctrine of adverse possession. The lower court held that the plaintiff, Somon, held the disputed area within the confines of his deed and if he did not, he obtained title to it by adverse possession, and if not by adverse possession then by acquiescence. While we disagree with the first and third findings, we do agree that the trial court was correct on the theory of adverse possession.

This case arose in 1974 after the defendant, Murphy Fabrication and Erection Company (Murphy), tore down

a portion of an old fence in order to run a sewer line from a trailer court it had under construction to a stream called Painters Run. Somon filed suit in the Circuit Court of Brooke County to establish his boundary line. He claimed ownership of the land from Painters Run to the fence by virtue of his deed and, if not by deed, then under adverse possession or the doctrine of acquiescence.

A preliminary injunction was requested and disposed of by an agreed order. Two hearings were held before the court, without a jury, with the trial court finding in favor of Somon on all three theories.[1]

Turning to the initial holding of the court, that the disputed area was within Somon's deed, both tracts of land go back to a common owner, Jacob. The defendant Murphy's tract of approximately 10 acres originally was conveyed by Jacob to Mozingo in 1930 and thence by mesne conveyance to Murphy. The calls in this chain of title along the disputed area remain constant. In the deed from Jacob to Somon in 1953, which conveyed the balance of the tract of approximately 207 acres, the same calls are found in the critical area. Thus, in the Somon deed we find the three calls as:

"... thence S. 47° 48'W. 275 feet; thence thence [*sic*] S. 72° 48' W. 217 feet to a stake; thence across Painter [*sic*] Run N. 31° 12' W. 783.75 feet. ..."

In the deed to Murphy they are expressed as follows:

"... thence with the Hillside, south of Painters Run, S. 47° 48' 00" W. 273.0 feet and south 72° 48' 00" W. 217.00 feet; thence leaving said hillside

---

[1] Despite the failure to strictly comply with Rule 52, West Virginia Rules of Civil Procedure, as to express findings of fact, the trial court did issue a short written memorandum of opinion. This enables us to make some judgment as to the basis of its rulings, but in so doing this may not preclude us in the future from reversing a case tried without jury on the sole basis that there is no substantial compliance with Rule 52. Counsel have a duty in this regard to their clients and the court to insure compliance with Rule 52.

and crossing Painters Run, N. 31° 12' 00" W. 683.75 feet to a point in a fence line; . . ."

The trial court apparently failed to attach any significance to these common calls and the fact that they cross Painters Run on the same line (N. 31° 12' W.), which would serve to establish the common boundary line south of Painters Run. Instead it relied upon the testimony of Somon's surveyor, who had made only one measurement on the ground. This was the line immediately preceding the first common call of S. 47° 48' W. 275 feet. The preceding call, which the surveyor measured, was almost at right angles to it, being N. 15° 45' W. 1211.10 feet. The trial court was impressed with the fact that this on-the-ground measurement ended at a point within three feet of the old fence line, which Somon claimed was the correct boundary line. This fence line was approximately 82 feet north of Painters Run and ran parallel to it across the disputed area.

Somon's surveyor testified that his on-the-ground measurement involved using a 100-foot steel tape which, because of the terrain, could only be extended to 30 feet. The surveyor had started his measurement on a road, but was ambiguous as to how this beginning point was located as it was not the beginning point in the deed nor was there any natural or artificial monument that located the point. From the road the line ran downhill through a wooded area which eventually ended at a cliff, where he shifted from what was described as level measurement into a vertical angle and distance measurement. His measurement ended at a location 85 feet north of Painters Run.

The surveyor conceded that at this point if the next calls in Somon's deed were followed, the line would not go back across or south of the run, nor would the calls follow the fence line. It is apparent from his measurement that there would be no way to reconcile the language in Somon's deed, nor to obtain a crossing of Painters Run on the third call of N. 31° 12' W.

We believe the factural situation presented here is different from most, if not all, of the boundary line cases that have come before this Court. In the cases we have reviewed, the respective deeds to the disputed area did not contain the same calls and distances. Here, on the other hand, except for the two-foot difference in distance manifested between the two calls of S. 47° 48' E., which we do not regard as being significant, the two lines are in common.

It is a generally recognized principle in boundary line disputes that the court must attempt to harmonize the calls contained in the respective deeds, if at all possible. In *Gauley Coal Land Company v. O'Dell*, 144 W. Va. 730, 736, 110 S.E.2d 833, 837 (1959), this rule was expressed as follows:

> "Calls, if they can be applied and harmonized in any reasonable manner in determining boundaries of a tract of land cannot be disregarded and as few calls or descriptions should be disregarded as is possible. 8 Am. Jur., Boundaries, § 52; *Lewis v. Yates*, 72 W.Va. 841, 79 S.E. 831."

Here not only were the calls in the two deeds in harmony in the disputed area, but both deeds gave the same call for crossing Painters Run from a line that was south of it.

In addition to the similarity of calls in the disputed area, there also existed in both deeds a reference to the same established monument, Painters Run. The testimony before the trial court was undisputed that during the period the parties held their respective properties and for a considerable time prior thereto, Painters Run had always been in the same location. A further rule of construction in boundary disputes is that great weight is to be attached to natural monuments that are embodied in deed calls and such natural monuments are given superiority over the calls in the event of a conflict. *Vandetta v. Yanero*, 157 W. Va. 220, 200 S.E.2d 674 (1973); *Blain v. Woods*, 145 W. Va. 297, 115 S.E.2d 88 (1960); *Matheny v. Allen*, 63 W. Va. 443, 60 S.E. 407 (1908).

Thus, we have a concurrence of the calls in the two deeds along the disputed area, coupled with a parallel crossing on the same line of Painters Run, all of which serve to establish the common boundary as being south of Painters Run and not north as found by the trial court. We, therefore, conclude that the trial court erred in establishing Somon's line north of Painters Run at the fence line by the deed calls.

The trial court also held that, even though it might be in error in establishing the actual boundary line as the fence line, Somon owned the disputed area by virtue of the doctrine of adverse possession.

To state that the doctrine of adverse possession is firmly established in our law is a mere truism and, yet, when one attempts an orderly assessment of the doctrine through the cases, it is at best an arduous task. It can be said that the doctrine is founded upon the legislative desire to settle land titles and is made manifest by the statute of limitations which bars the right to recover real property. *Porter v. Staley*, 99 W. Va. 91, 127 S.E. 911 (1925); *Riffle v. Skinner*, 67 W. Va. 75, 67 S.E. 1075 (1910); 3 Am. Jur. 2d *Adverse Possession* § 2; 2 C.J.S. *Adverse Possession* § 2; 1A Michie's Jur. *Adverse Possession* § 2.[2] Thus, the period for holding property under the doctrine is co-equal to the statute of limitations barring suits for recovery of real property which at the present time is ten years. *W. Va. Code*, 55-2-1.

This Court has spoken on a number of occasions on the doctrine of adverse possession, and while there is some semantic difference in the wording of the doctrine, we believe that the elements of the doctrine can be fairly stated as follows.

One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of

---

[2] It is to be noted that there are certain statutory exceptions to the ten-year period found in *W. Va. Code*, 55-2-2 to -4, but these are not germane to this case.

the following elements for the requisite statutory period:[3] (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title.[4] *Bitonti v. Kauffield Co.*, 94 W. Va. 752, 120 S.E. 908 (1923); *Wilson v. Barden*, 56 W. Va. 372, 49 S.E. 409 (1904); *Heavner v. Morgan*, 41 W. Va. 428, 23 S.E. 874 (1895); *Core v. Faupel*, 24 W. Va. 238 (1884).

While no useful purpose could be served in attempting to analyze each of the cases in this jurisdiction as they may define the various elements, it is perhaps worthwhile to restate in a brief fashion the generally accepted definitions.

Thus, for the element of "hostile" or "adverse" possession, the person claiming adverse possession must show that his possession of the property was against the right of the true owner and is inconsistent with the title of the true owner. The word "hostile" is synonymous with the word "adverse" and need not and does not import that the disseisor must show ill will or malevolence to the true owner. *Core v. Faupel, supra; Brewer v. Brewer*, 238 N.C. 607, 78 S.E.2d 719 (1953); 2 C.J.S. *Adverse Possession* § 60.

For "actual" possession, there must be an exercising of dominion over the property and the quality of the acts of dominion are governed by the location, condition and reasonable uses which can be made of the property. *State v. Morgan*, 75 W. Va. 92, 83 S.E. 288 (1914); 3 Am

---

[3] Such person is technically referred to as the "disseisor."

[4] Some courts use the term "claim of right" in lieu of claim of title. Both phrases are synonymous and are distinct from the principle of "color of title." The latter phrase denotes that the disseisor possesses some type of written title paper; whereas under the concept of claim of title or right, the disseisor has no title paper but a mere naked assertion of ownership. *See*, 5 Thompson, *Real Property* § 2549; 4 Tiffany, *The Law of Real Property* § 1147.

Jur. 2d *Adverse Possession* §§ 13, 14, 2 C.J.S. *Adverse Possession* § 33.

For possession to be open and notorious, it is generally meant that the acts asserting dominion over the property must be of such a quality to put a person of ordinary prudence on notice of the fact that the disseisor is claiming the land as his own. *Parkersburg Industrial Co. v. Schultz*, 43 W. Va. 470, 27 S.E. 255 (1897); 3 Am. Jur. 2d *Adverse Possession* § 47. Proof of actual knowledge on the part of the true owner is ordinarily not required. *Talbott v. Woodford*, 48 W. Va. 449, 37 S.E. 580 (1900); 2 C.J.S. *Adverse Possession* § 49.

The element of "exclusive" possession relates to the fact that the disseisor must show that others do not have possession, although this does not mean that sporadic use by others defeats this element since it only need be the type of possession which would characterize an owner's use. *Point Mountain Coal and Lumber Co. v. Holly Lumber Co.*, 71 W. Va. 21, 75 S.E. 197 (1912); *Norgard v. Busher*, 220 Ore. 297, 349 P.2d 490 (1960); 3 Am. Jur. 2d *Adverse Possession* § 50; 2 C.J.S. *Adverse Possession* § 54. Exclusivity has also been applied to the concept of dominion over the entire tract, but this may not in all circumstances be essential. Compare *State v. Morgan, supra,* with *Parkersburg Industrial Co. v. Schultz, supra.*

For the possession to be "continuous" is merely to state that it must last for the statutory period, which, as we have seen, is the fundamental basis for the doctrine of adverse possession. *Parkersburg Industrial Co. v. Schultz, supra;* 2 C.J.S. *Adverse Possession* § 149.

While the courts have not been entirely consistent in observing the distinction between the concept of claim of right and color of title, there is a generally recognized difference. *See,* 3 Am. Jur. 2d *Adverse Possession* §§ 100, 105; 2 C.J.S. *Adverse Possession* §§ 60, 67. A claim of title has generally been held to mean nothing more than that the disseisor enters upon the land with the intent to claim it as his own. *Heavner v. Morgan, supra.* Whereas,

"color of title" imports there is an instrument giving the appearance of title, but which instrument in point of law does not. In other words, the title paper is found to be defective in conveying the legal title. *Stover v. Stover*, 60 W. Va. 285, 54 S. E. 350 (1906).

It has been said that the office of claim of title or color of title is to define the area which can be claimed by adverse possession. Generally, where one asserts adverse possession under a claim of title, the extent of his possession is limited by the area over which he has exercised actual dominion. Under color of title, the limit is determined by the description contained in the title paper, as long as the disseisor has exercised some dominion over a portion thereof and the other elements are satisfied. *Core v. Faupel, supra.*

The foregoing definitions are at best fragile guidelines to outline in a general way the elements of adverse possession, which in the main cannot be naturally compartmentalized in a given case. They serve only as a beginning point, as no attempt has been made to fit within them subsidiary principles and exceptions that have long been recognized.

Turning from these abstract principles to the case at hand, we note the following salient facts: Somon obtained his deed in 1953 and prior to the actual conveyance had walked the boundary of the tract, including the old fence line, with his grantor. In this regard he stated that the old fence, standing in what is now the disputed area, was in existence and did constitute a portion of the fence line that enclosed the entire property. Prior to receiving his grant, he had leased the property from his grantor and had utilized it primarily for grazing cattle with occasional cutting of timber and hunting, and these uses continued after he obtained title to the property. He also made some repairs to the old fence in the disputed area, and this was corroborated by a neighbor.

The record is clear that from 1953 until 1973, when Murphy through its attorney advised that the fence line

was on its property, Somon was not disturbed in his uses of the disputed area by Murphy or anyone claiming through Murphy.

Murphy's attack to Somon's claim of adverse possession rests upon a broad front with the initial contention that none of the elements were proven.

We do not believe that this position can be sustained under the facts. It appears that for the statutory period the old fence line formed part of the entire fence line that the testimony indicated surrounded Somon's farm. There was an enclosure coupled with the grazing of cattle and cutting of timber, which has been held to be sufficient to establish necessary elements of adverse possession. *State v. Morgan, supra; Wilson v. Barden, supra; Chilton v. White,* 72 W. Va. 545, 78 S.E. 1048 (1913).

The one challenge that appears of merit is Murphy's assertion that since Somon thought the boundary line was the old fence line, he did not intend to possess the disputed area adversely or hostilely. The argument is advanced that Somon, being mistaken in believing that his deed description carried to the fence line north of Painters Run, when in fact it did not, never intended to lay adverse claim to the disputed area. In effect he could not claim adversely as he had a bona fide belief that he owned the area. Reliance is placed by appellant on the third syllabus of *Greathouse v. Linger,* 98 W. Va. 220, 127 S.E. 31 (1925), which states:

> "Where one by mistake occupies land up to a line beyond his actual boundary, believing it to be the true line, but only intends to claim to the true line, he can not by adverse possession acquire title to the land not actually covered by his title papers."

When we read the case we find the syllabus does not accurately reflect the language set out in the opinion, which in turn came from the earlier case of *Heaver v. Morgan, supra.* The opinion language in *Greathouse,* 98 W. Va. at 222 is:

" 'If one by mistake enters on the lands of another, his title papers not actually covering the land entered, he can not by adverse possession under color of title acquire title to the land not actually covered by his title papers, *but will be limited to the land actually enclosed and of which he has the pedis possessio.*' *Coal & Lumber Co. v. Lumber Co.*, 71 W. Va. 21, 26; *Heavner v. Morgan*, 41 W. Va. 428; 2 C.J. 139; 1 R.C.L. 733." (Emphasis supplied)

Neither statement of law, however, deals with the question of adverse intent. It is clear that the Court was discussing the question of the area over which adverse possession could be obtained. This relates to the element in adverse possession dealing with color of title or claim of title. The doctrine of mistake as to boundaries in adverse possession centers on the element of adversity or hostility. 3 Am. Jur. 2d *Adverse Possession* §§ 39-42; 2 C.J.S. *Adverse Possession* §§ 79-82. This principle is stated in Annot., 80 A.L.R.2d 1171, 1173, as follows:

"The solution of the question whether adverse possession can be established, although there has been a mistake in or ignorance of boundary lines, is controlled by whether possession under such circumstances, all other factors being present, can be considered hostile."

The three West Virginia cases, *Greathouse v. Linger*, supra, *Point Mountain Coal & Lumber Co. v. Holly Lumber Co.*, supra; and *Heavner v. Morgan*, supra, do not deal with the issue of mistake, but rather are concerned with the scope or extent of adverse possession that can be obtained where one claims land that is not actually in his deed even though he thought it to be. They conclude that one, who by mistake enters land of another thinking such land is covered in his deed, must show actual possession in order to hold the land adversely. This is nothing more than stating that his possession in the disputed area rests upon a "claim of title" as distinguished from a "color of title." They do not touch upon the question of whether a mistake as to boundary negates the element of adversity or hostility.

We are not aware of any case in which this Court has been asked to consider whether, if it is shown that one holds property under the mistaken belief it is within his deed, this fact destroys his right to claim that he held it hostilely or adversely. The annotation in 80 A.L.R.2d 1171 collates the various cases and theories and the case of *Norgard v. Bushe*, 220 Ore. 297, 349 P.2d 490, 80 A.L.R.2d 1161 (1960), provides a full analysis of these theories.

It is, perhaps, sufficient to comment briefly on the two major and opposite views that have evolved in this area. One advances a subjective test; the other an objective one. Those courts that follow the subjective test reason that the element of hostile and adverse connotes a mental intent and therefore if one entertains a belief that he holds the disputed area by virtue of his title document, he does not possess it with the requisite adverse or hostile intent. The other view looks on the physical acts and concludes that if physical dominion has been exercised over the disputed area, this is sufficient to satisfy the adverse or hostile element. As Holmes, C. J., stated in *Bond v. O'Gara*, 177 Mass. 139, 58 N.E. 275 (1900), "His claim is not limited by his belief." We favor this latter theory.

The reasons for such selection may be at best arbitrary, but it does appear that proof is more certain if limited to objective evidence. The physical evidence of possession should alert the true owner that an adverse claim is made, at which point he has ten years to end the problem. It is also compatible with the claim of title that must be shown in order to satisfy this element of the doctrine of adverse possession in this type of case. This is true since the actual boundaries of the disputed area have been shown not to lie within the title instrument, thus giving rise to the "mistake" in the first instance. The only way the disseisor can hold is by showing actual dominion over the disputed area, which is the basis for a claim of title.

The final ground asserted by the trial court to sustain title in Somon was the doctrine of acquiescence. This doctrine arises from the fact that the parties have agreed to a common line and by their use of the respective sides of the common line the acquiescence is found. *Clear Fork Coal Co. v. Anchor Coal Co.* 111 W. Va. 219, 161 S.E. 229 (1931); *George v. Collins,* 72 W. Va. 25, 77 S.E. 356 (1911); *Gwynn v. Schwartz,* 32 W. Va. 487, 9 S.E. 880 (1889). We find that there is not sufficient proof in the record to support a showing of acquiescence on the disputed boundary.

Based on ownership through adverse possession, the decree of the lower court is affirmed.

*Affirmed.*