370 S.E.2d 132

**Margaret L. SEELEY, et al.**

v.

**James LaROSA, et al., Buckhannon Coal Corp., etc., and Enoxy Coal Co., Inc.**

**No. 17369.**

Supreme Court of Appeals of West Virginia.

June 2, 1988.

---

Joseph A. Noggy, Buckhannon, for Margaret L. Seeley, et al.

Frank E. Simmerman, Jr., Clarksburg, for James LaRosa, et al., Buckhannon Coal Corp. etc., and Enoxy Coal Co. Inc., defendant below appellees.

PER CURIAM:

In 1962, James and Emilia LaRosa conveyed a large tract of land in Upshur County, West Virginia to Buckhannon Coal Corporation, a corporation in which Mr. LaRosa was a principal. On August 5, 1966, Mr. LaRosa conveyed to Mrs. Margaret Seeley for $1,200 a surface tract of 7.972 acres derived from the same parcel of land he had conveyed to Buckhannon Coal Company. The deed contained covenants of general warranty. Presumably Mr. LaRosa intended to convey the property in the name of Buckhannon Coal Corporation and surrender its interest in the surface tract of that acreage.[1] The 1967 county tax assessment book reveals that this tract was removed from the Buckhannon Coal Corporation's assessment at that time and assessed against the Seeleys. Since 1967, the Seeleys have paid taxes and have lived openly on the property.

Because Mr. LaRosa conveyed the land in question as an individual rather than as an officer of the Buckhannon Coal Corporation, a title dispute arose between the Seeleys on one side and Mr. LaRosa and Buckhannon Coal Corporation on the other. Despite repeated requests on behalf of Mr. and Mrs. Seeley that the technical defect in their title be corrected, the defendants have refused to grant the Seeleys a clear title to the property.[2]

On March 23, 1983, the Seeleys filed suit in the Circuit Court of Upshur County to quiet title to the property claiming that they had perfected their title to the property through adverse possession. In the al-

1. Buckhannon Coal Corporation has a 68/100 interest and James D. LaRosa has a 32/100 interest in the overall tract of land from which the Seeleys' parcel was severed.

2. It seems that the Seeleys had no indication that their title was defective until they attempted to sell the land in 1974 and the title examination revealed that Mr. LaRosa had already conveyed the land to Buckhannon Coal Corporation. The Seeleys had presumed that Mr. LaRosa, as principal of the Buckhannon Coal Company, had conveyed the land to them on behalf of the corporation. Repeated attempts in the mid 1970's to get Buckhannon Coal Company to quit claim their interest in the Seeley tract failed.

ternative, the petitioners asked the court to compensate them for the consideration that they paid to James and Emilia LaRosa for the purchase of the property ($1,200) and $35,000 for lost profits that the plaintiffs would have realized on the sale of the property had Mr. LaRosa conveyed to them clear title as he had warranted. At the circuit court's request, both parties submitted briefs on the defendant's motion for summary judgment. Defendants asserted that the plaintiffs could not obtain ownership of the real estate through adverse possession and that plaintiffs' claim for breach of warranty and damages must fail under *W.Va.Code*, 55–2–1 [1923] [3] because ten years had passed before they asserted their claim. Thus, the plaintiffs were barred by the statute of limitations from bringing the action. The plaintiffs asserted that *W.Va.Code*, 55–2–1 [1923], relied upon by the defendants, rather, should be used to bar any counterclaim by the defendants. The plaintiffs further asserted that there were material facts and circumstances that should be presented to a jury to determine whether there was valid adverse possession. After reviewing the parties' arguments, the circuit court granted the defendants' motion for summary judgment.

On appeal to this Court the plaintiffs assert that the circuit court erred as a matter of law in granting the motion for summary judgment.

## I

The doctrine of adverse possession is founded upon the legislative desire to settle land titles and is made manifest by the statute of limitations which bars the right to recover real property. *Somon v. Murphy Fabrication & Erection Co.*, 160 W.Va. 84, 232 S.E.2d 524 (1977); *Porter v. Staley*, 99 W.Va. 91, 127 S.E. 911 (1925); *Riffle v. Skinner*, 67 W.Va. 75, 67 S.E. 1075 (1910). To acquire title by adverse possession, property must be held openly,

notoriously, and under color of title for a period equal to the statute of limitations for recovery of real property, which at the present time is ten years. *W.Va.Code*, 55–2–1 [1923].

The doctrine of adverse possession is firmly established in our property law and accompanies *W.Va.Code*, 55–2–1 [1923]. Adverse possession enables one who has been in possession of a piece of real property for more than ten years to bring an action asserting that he is now the owner of that piece of property even when title rests in another. The elements of adverse possession were set out in syllabus point 3 of *Somon v. Murphy Fabrication & Erection Co., supra*:

> "One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title."

*See also, Bitonti v. Kauffeld Co.*, 94 W.Va. 752, 120 S.E. 908 (1923); *Wilson v. Braden*, 56 W.Va. 372, 49 S.E. 409 (1904); *Heavner v. Morgan*, 41 W.Va. 428, 23 S.E. 874 (1895); *Core v. Faupel*, 24 W.Va. 238 (1884).

The circuit court ruled that the Seeleys' adverse possession claim failed as a matter of law on the first element of the doctrine as they could not show that their possession of the property was hostile to the right of the true owner.

In *Somon, supra*, 160 W.Va. at 90, 232 S.E.2d at 528 we explained how one meets the "hostile" element of adverse possession:

> "[F]or the element of 'hostile' or 'adverse' possession, the person claiming adverse possession must show that his pos-

---

**3.** *W.Va.Code*, 55–2–1 [1923] provides:

"No person shall make an entry on, or bring an action to recover, any land, but within ten years next after the time at which the right to make such entry or to bring such action shall have first accrued to himself or to some person through whom he claims."

session of the property was against the right of the true owner and is inconsistent with the title of the owner. The word 'hostile' is synonymous with the word 'adverse' and need not and does not import that the disseisor must show ill will or malevolence to the true owner."

*See also, Core v. Faupel, supra.*

Appellees assert that the Seeleys clearly recognized the title of the true owners because their letters to the LaRosas sought to have the true owners convey proper title to the Seeleys.[4] Appellees assert that these letters were admissions by the plaintiffs that they were attempting to obtain ownership of the property by a new deed. Therefore, the Seeleys were acknowledging the true owners' title and failed to meet the "hostile" element. We disagree.

None of the letters appellees point to indicates that Mr. and Mrs. Seeley did not feel that they actually owned the property. All of the letters include statements by each attorney to the effect that Mr. and Mrs. Seeley purchased the property. Furthermore, this is an entirely logical position given the apparent unity of interest between Mr. LaRosa and the Buckhannon Coal Company. There is no indication in any of the letters that Mr. LaRosa or any party other than Mr. and Mrs. Seeley actually owned the property. The appellees are confusing the issue of ownership with defect in title. Clearly, the Seeleys felt that they owned the land or they would not have paid taxes on the land for sixteen years.

The Seeleys not only claimed ownership of the land under color of title since 1966, they exercised the right of ownership over the premises by granting a right of way across the property; they had a survey of the premises conducted; they repaired fence lines on the property and installed new fence lines; and, they cut a road through the property. The fact that the Seeleys repeatedly wrote Mr. LaRosa and Buckhannon Coal Corporation concerning their title defects indicates that the defendants should have been put on notice that the Seeleys were exercising their ownership over the property. When physical dominion has been exercised over a disputed area, this is sufficient to satisfy the adverse or hostile element. *Somon v. Murphy Fabrication & Erection Co., supra,* 160 W.Va. at 95, 232 S.E.2d at 531.[5]

The Seeleys have exercised physical possession over the land since 1967 and paid the taxes assessed against the tract. This should have alerted the appellees that an adverse claim was being made against their land. Therefore, we find that the circuit court erred as a matter of law in concluding that the Seeleys did not satisfy the "hostile" element of adverse possession. The appellees' motion for summary judgment on this issue should not have been granted. Furthermore, the facts in the record are so clear that it is apparent to us that summary judgment should be entered on behalf of the Seeleys.

4. A letter from attorney David R. Rexroad dated July 8, 1974, recognized that the grantors "had already conveyed the land to Buckhannon Coal Corporation in 1963." A letter from attorney Robert G. Durnal, dated May 29, 1979, states that James LaRosa conveyed a tract of land to Mrs. Seeley in 1966 but "in 1962 [James] had conveyed the tract from which this parcel is derived to Buckhannon Coal Corporation." In 1982, Joseph A. Noggy wrote: "The problem which presently exists is that at the time you signed the general warranty deed conveying the property to Mrs. Seeley the tract of land actually was in the name of Buckhannon Coal Corporation."

5. In *Somon v. Murphy Fabrication & Erection Co.,* 160 W.Va. at 95, 232 S.E.2d at 531 (1977), we commented briefly on the two major and opposite views that have evolved in the "hostile"

and "adverse" element of adverse possession. One view advances a subjective test; the other advances an objective one. Those courts that follow the subjective test reason that the element of hostile and adverse connotes a mental intent and therefore if one entertains a belief that he holds the disputed area by virtue of his title document, he does not possess it with the requisite hostile intent. The other objective view looks on the physical acts and concludes that if physical dominion has been exercised over the disputed area, this is sufficient to satisfy the adverse or hostile element. We agreed with the objective test. As Holmes, C.J. stated in *Bond v. O'Gara,* 177 Mass. 139, 58 N.E. 275 (1900), "His claim is not limited by his belief." Also, proof is more certain if limited to objective evidence.

**480**

Accordingly, the judgment of the Circuit Court of Upshur County is reversed and the case is remanded with directions to enter summary judgment for the appellants and quiet title to the property.

Reversed and remanded with directions.