IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0411

_____

FILED

November 19, 2019

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TEUBERT FAMILY FARMS, LLC,
Petitioner

V.

KENNETH J. BRAGG and AIMEE S. BRAGG,
Respondents

_____

Appeal from the Circuit Court of Greenbrier County
The Honorable Robert E. Richardson, Judge
Civil Action No. 15-C-195(B)

REVERSED AND REMANDED

_____

Submitted: October 1, 2019
Filed: November 19, 2019

Thomas W. White, Esq.                    Barry L. Bruce, Esq.
Haley S. Hillen, Esq.                    Barry L. Bruce & Associates, LC
Dinsmore & Shohl LLP                     Lewisburg, West Virginia
Lewisburg, West Virginia                 Counsel for the Respondents
Counsel for the Petitioner

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

2.     "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

3.     "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial."  Syl. Pt. 3, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

4.     "One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period:  (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title."  Syl.

i

Pt. 3 *Somon v. Murphy Fabrication and Erection Co.,* 160 W.Va. 84, 232 S.E.2d 524 (1977).

5.     "The burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title."  Syl. Pt. 2 *Brown v. Gobble,* 196 W.Va. 559, 474 S.E.2d 489 (1996).

ARMSTEAD, Justice:

Petitioner Teubert Family Farms, LLC, ("Teubert Family Farms") appeals the April 19, 2018 order issued by the Circuit Court of Greenbrier County granting summary judgment to respondents Kenneth J. Bragg and Aimee S. Bragg (the "Braggs") on their adverse possession claim as to 9.21 acres ("Disputed Property"). On appeal, Teubert Family Farms argues that the circuit court erred by finding that the Braggs had met every element of adverse possession as a matter of law, despite the questions of fact pertaining to permissive use of the Disputed Property.

Upon consideration of the parties' briefs and oral arguments, the submitted record, and the applicable authorities, this Court finds merit to Teubert Family Farm's arguments. Accordingly, the circuit court's final order is reversed, and this case is remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Kenneth J. Bragg purchased approximately seventy-three acres of real estate in Greenbrier County ("Bragg Property").[1] The Bragg Property adjoined property owned by the Harris Export Coal Corporation (the "Corporation"), whose president and sole shareholder was John Brown Harris ("Mr. Harris"). Mr. Bragg did not commission a survey of his property when it was purchased, but he claims that in 1996, Mr. Harris told him that the property boundary line was determined by a "little timberline/big timberline" boundary, which reflected that certain portions of the property

---

[1] In 2013, Mr. Bragg conveyed the property to himself and Mrs. Bragg jointly.

1

had been timbered, resulting in a little timberline, while other portions had not. Mr. Bragg also claims that Mr. Harris actually pointed to the boundary line. However, Mr. Harris does not recall this conversation.

Mr. Bragg testified that he posted the Disputed Property in 1996. However, Mr. Harris does not recall seeing any "No Trespassing" or "No Hunting" signs. Mr. Bragg further testified that in 1997, he cleared and cultivated the Disputed Property and constructed ponds on the Disputed Property. At some point, Mr. Bragg asked Mr. Harris for permission to use his road and to hunt on what is now referred to as the Teubert Property, which permission Mr. Harris granted.[2] In addition to requesting permission for himself, Mr. Bragg requested permission for some of his friends and family to also hunt on the Teubert Property, but Mr. Harris refused this request as to everyone other than Mr. Bragg's brother.

On June 11, 2012, Teubert Family Farms purchased 652.69 acres from the Corporation ("Teubert Property"). The Teubert Property adjoins the Bragg Property, and

[2] During his deposition, Mr. Bragg initially testified that he requested permission to use the road over the Harris property around 2000-2001. However, later in his deposition, Mr. Bragg testified that he requested permission to use the road across Mr. Harris' property in the early spring of 1996, and the conversation in which he requested permission to hunt on the Teubert Property occurred after the conversation regarding the road. In their motion for summary judgment, the Braggs state that Mr. Bragg misstated the date of permission during his deposition, and he corrected those statements on an Errata Sheet advising that the conversation occurred in 2000-2001. Although Mr. Harris mentioned conversations about the permission he granted to the Braggs in his Affidavit and his deposition, there is no mention of the dates on which such permission was granted. Mrs. Bragg testified to only having one conversation with Mr. Harris when she was introduced to him during the time frame between 1996-2000. However, she was not present for any conversations regarding the type of permission Mr. Harris granted to use his property.

2

the Disputed Property was included in the metes and bounds description of the Teubert Property when it was purchased in 2012. At some point after Teubert Family Farms purchased the Teubert Property, a dispute arose between the parties as to the ownership of the Disputed Property. Both parties believed that they owned the Disputed Property. In 2013, the Braggs had their property surveyed, and this survey revealed that the Disputed Property was not included in their 1995 deed description. In 2014, the Braggs commissioned another survey of the Disputed Property.

After obtaining the second survey, the Braggs recorded a general warranty deed dated October 9, 2015, purporting to convey title of the Disputed Property listing themselves as both grantor and grantee. On November 16, 2015, Teubert Family Farms filed its Complaint against the Braggs. The Complaint sought to quiet title, requested injunctive relief, and alleged slander of title. On December 22, 2015, the Braggs filed their answer and counterclaim. Both Teubert Family Farms and the Braggs filed motions for summary judgment. A hearing on the parties' cross-motions for summary judgment was held on August 7, 2017. By order entered on April 19, 2018, the circuit court granted summary judgment to the Braggs. The circuit court found:

> 9. While there was permission granted to use the entirety of the Teubert Property for a specific purpose (*i.e.,* hunting), the Defendants used and occupied the Disputed Property for purposes well beyond any for which permission had been granted. In posting, clearing, cultivating, seeding, and mowing the Disputed Property, and in constructing a pond upon the Disputed Property, the Defendants possessed the Disputed Property in a manner that was clearly against the right of the true owner and inconsistent with the title of the true owner. The use of the Disputed Property for these purposes was not

3

permissive, and such use satisfies the "hostility" element of an adverse possession claim to the Disputed Property. The permission granted to the Defendants to hunt upon the entirety of the Teubert Property does not negate the adverse and hostile nature of the Defendants' use and possession of that portion of the Teubert Property included within the Disputed Property.

12. Based upon the undisputed facts in this action, the Defendants satisfied every element required of an adverse possession claim, including the ten-year statutory period, no later than 2007, while Harris Export Coal Corporation was the record owner of the Teubert Property. Title to the Disputed Property was therefore vested in the Defendants not later than 2007, at which time Harris Export Coal Corporation was disseized of its title to the same.

This appeal by Teubert Family Farms followed.

## II. STANDARD OF REVIEW

On appeal, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Pursuant to Rule 56(c) of the *West Virginia Rules of Civil Procedure,* summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is well established that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). "The circuit court's function

4

at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

"[W]e must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion." *Williams v. Precision Coil, Inc.* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995). In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as

> "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … [s]ummary judgment should be denied even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom."

*Id.* (internal quotations and citations omitted).

As this Court has previously noted, "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Williams v. Precision Coil,* 194 W.Va. at 60 459 S.E.2d at 337. We will now examine whether the circuit court erred in granting summary judgment to the Braggs.

### III. ANALYSIS

This matter involves our law on adverse possession. By way of background, we note that "[t]he doctrine of adverse possession is firmly established in our property law and accompanies W.Va. Code 55-2-1 [1923] in settling land disputes equitably and efficiently." *Naab v. Nolan,* 174 W.Va. 390, 392, 327 S.E.2d 151, 153 (1985).

5

One who seeks to assert title to a tract of land under the doctrine of adverse possession must prove each of the following elements for the requisite statutory period: (1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3) That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; (6) That possession has been under claim of title or color of title.

Syl. Pt. 3, *Somon v. Murphy Fabrication and Erection Co.,* 160 W.Va. 84, 232 S.E.2d 524 (1977)). "The burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title." Syl. Pt. 2 *Brown v. Gobble,* 196 W.Va. 559, 474 S.E.2d 489 (1996). "This doctrine enables one who has been in possession of a piece of real property for more than ten years to bring an action asserting that he is now the owner of that piece of property even when title rests in another." *Naab,* 174 W.Va. at 392, 327 at 153-154.

Cross-motions for summary judgment were filed in this case. Teubert Family Farms argued that the Braggs did not possess the Disputed Property "adversely" or "hostilely."[3] The Braggs argued that they met all of the elements of adverse possession because the permission that had been given by Mr. Harris was not for the specific activities that they performed on the Disputed Property.

---

[3] In its motion for summary judgment, Teubert Family Farms also argued that the Braggs did not have exclusive possession of the Disputed Property. This argument was not included by Teubert Family Farms in its assignments of error, and thus will not be addressed.

For the element of "hostile" or "adverse" possession, the party claiming adverse possession must show that their possession of the property was against the right of the true owner and was inconsistent with the title of the true owner. "The word 'hostile' is synonymous with the word 'adverse' and need not and does not import that the disseisor must show ill will or malevolence to the true owner." *Somon,* 160 W.Va. at 90, 232 S.E.2d at 528. This Court has recognized that permission, in the context of both adverse possession and prescriptive easements, can be express or implied. *See Fantasia v. Schmuck,* 183 W.Va. 361, 395 S.E.2d 784 (1990) and *O'Dell v. Stegall,* 226 W.Va. 590, 703 S.E.2d 561 (2010). In *Fantasia,* this Court noted "[I]f the use of the land in dispute is permissive, the element of hostility or adversity is negated." 183 W.Va. at 363, 395 S.E.2d at 786. In the context of prescriptive easements, this Court noted "[p]remission may be inferred 'from the neighborly relation of the parties, or from other circumstances.'" *O'Dell,* *226* W.Va. at 613, 703 S.E.2d at 584 (quoting 4 *Powell on Real Estate,* § 34.10[2] [a]). In the context of prescriptive easements, this Court has previously stated:

> Easements by prescription are not favored in the law, because they essentially reward a trespasser and allow the taking of another's property without compensation. It this modern age, it does little to encourage civility between neighbors to have a rule whereby a landowner, who allows his neighbor to use some part of his land, runs the risk that the use may transmogrify into a legally-binding prescriptive use merely by the passage of time. Such a rule, as this case demonstrates, encourages expensive litigation between neighbors to either obtain some legal injunction to stop the use of the land, or obtain a legal ruling definitely establishing an easement. Worse, such a rule might impel neighbors to resort to aggressive, extra-legal acts in defense of their property.

*O'Dell,* 226 W.Va. at 614-615, 703 S.E.2d at 585-586.

It is undisputed that Mr. Bragg had been given express permission by Mr. Harris to perform various activities on the Tuber Property. Mr. Harris admitted to giving Mr. Bragg permission to use the roads and to hunt on the Tuber Property.[4] In addition, Mr. Harris gave Mr. Bragg permission to install a combination lock for his use on the access gate to the Tuber Property. Mr. Harris also stated that "Mr. Bragg had permission to use that portion of the Tuber Property that he now asserts to own via adverse possession." It is also undisputed that the Braggs used the Disputed Property for purposes other than those for which express permission had been given. In granting summary judgment to the Braggs, the circuit court found that the Braggs posted, cleared, cultivated, seeded and mowed the Disputed Property, and also constructed ponds on the Disputed Property. The circuit court found that these additional uses were not permissive and as such, those additional uses satisfied the "hostility" element of the adverse possession claim. The circuit court's order referred to "permission," but it did not differentiate between express and implied permission.

The Braggs filed fourteen affidavits which they argue contradict the affidavit of Mr. Harris.[5] However, the affidavits filed on behalf of the Braggs do not directly address

---

[4] These admissions were made in Mr. Harris' affidavit, which was executed on May 9, 2016.

[5] Mr. Bragg testified that his attorney prepared the affidavits, and they were executed at two meetings (one in Bingham and one in Ansted). All of the affidavits contain

the issue of permission. Despite the fact that all of the affiants attest to having witnessed Mr. Bragg performing certain tasks on the Disputed Property such as building a pond[6] and fencing the property, they do not provide any specific information about these tasks. For example, each of the affiants attest to having witnessed Mr. Bragg "fence the property," but it is not clear what is meant by fencing. According to the deposition testimony of Mrs. Bragg, she believed that her husband fenced the property sometime in the 1990s, and she thought that the fencing material was wire or rails. She further testified that the purpose of this fence was to establish a boundary, and she was emphatic in her recollection that the fence encompassed the ponds. However, according to the deposition testimony of Mr. Bragg, he did not install any type of fencing (metal or otherwise) until at least 2013.[7] Further, at least one affiant attested in one paragraph to witnessing Mr. Bragg maintain "exclusive control of said property for at least ten years." However, the same affiant marked through another paragraph that stated that there is "no question that Mr. Bragg has had exclusive control over the property for at least ten years prior to June 11, 2012." The

---

the same nine numbered paragraphs, and all of the affidavits have the same handwritten changes to paragraph numbers 5 and 7.

[6] In paragraph number 5 of the affidavits, the affiants state that they "have known" that Mr. Bragg built "ponds," but in the following paragraph most affiants state that they witnessed Mr. Bragg build "a pond."

[7] Mr. Bragg testified that he posted signs in 1996, and he considered the posted signs a fence.

affidavits filed by the Braggs do not provide any information about when or how often each of the affiants visited the Disputed Property.[8]

The circuit court found that the Braggs had satisfied "every element required of an adverse possession claim, including the ten-year statutory period, no later than 2007." This finding implies that the statutory period ran from 1997 – 2007. The circuit court addressed the issue of permission by noting that the Braggs had been granted permission to use the entirety of the Tuber Property for hunting, but then found that the Braggs "used and occupied the Disputed Property for purposes well beyond any for which permission had been granted."[9]

We find that the circuit court erred by finding no material question of fact was in dispute as to whether the Braggs satisfied every element required of an adverse possession claim. Numerous material factual disputes are present in this case, including 1)

---

[8] Mrs. Bragg testified that she has not personally visited the Disputed Property since 2009. Many of the affiants are family members of Mrs. Bragg, either by blood or marriage, including her mother, sister, brother in law, aunt, and uncle, and it is unclear when these affiants visited the property to witness these acts and obtain the information contained in their affidavits.

[9] At least one of the uses that the circuit court relied upon in concluding that the Braggs had satisfied the "hostility" element of the adverse possession claim remains a question of fact. The circuit court ruled that the Braggs had posted the Disputed Property, but the testimony regarding what was meant by "posting" or "fencing" is unclear. As has previously been noted, Mr. Bragg considered posted signs a fence. None of the Braggs' affidavits refer to posted signs, but all of the affidavits refer to fencing the property. Further, Mrs. Bragg testified about fencing, and it was clear that she was referring to the common use of the word fencing as she thought the fencing was constructed of wire or rails. Mrs. Bragg did not testify as to whether the Disputed Property had been posted. Although it may be a typographical error, in their motion for summary judgment, the Braggs state "It is contradicted that Defendants posted the property from 1996 on."

the type and extent of permission granted to the Braggs to use the entirety of the Tuber Property versus the Disputed Property, 2) the years that the Braggs used the Disputed Property, and 3) the types of activities/uses that the Braggs exercised on the Disputed Property. These disputes must be resolved by a trier of fact. "In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Williams v. Precision Coil, Inc.,* 194 W.Va. at 59, 459 S.E.2d at 336 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 Sc.D. at 2513). Such factual determinations are material to the determination as to whether the Braggs' use of the Disputed Property was adverse or hostile, an essential element of a claim of adverse possession. Accordingly, summary judgment was not appropriate in this case.

## IV. CONCLUSION

For the reasons stated above, we reverse the circuit court's order granting summary judgment to the Braggs and remand this matter to the circuit court for further proceedings.

Reversed and Remanded.